**TRANSNATIONAL CORP.,**
**Plaintiff, Appellee,**

**v.**

**RODIO & URSILLO, LTD., etc.,**
**Defendant, Appellant.**

**No. 90–1298.**

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1990.

Decided Dec. 12, 1990.

Michael K. Marran, with whom Fred T. Polacek, Providence, R.I., was on brief, for defendant, appellant.

Matthew F. Medeiros, with whom Flanders & Medeiros Inc., Providence, R.I., was on brief, for plaintiff, appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

The defendant-appellant, Rodio & Ursillo, Ltd. ("Rodio"), challenges an adverse jury verdict in the United States District Court for the District of Rhode Island [1] awarding $41,993.80 plus interest in damages to the plaintiff-appellee, Transnational Corporation, d/b/a Danbury Airways ("Danbury"). Danbury brought this action asserting two claims which were submitted to the jury: breach of contract and quantum meruit. Rodio raises two issues on appeal. First, the appellant claims that the district court erred in refusing to give the agency instruction proffered by the appellant. Second, the appellant argues that the district court erred in amending its instructions on quantum meruit. Danbury counters these arguments and further argues that this appeal is frivolous and asks this Court for the award of attorneys' fees and costs pursuant to Fed.R.App.P. 38. This is a diversity action decided under Rhode Island law. After a thorough review of the trial record and the parties' arguments, we affirm the jury's verdict and award Danbury attorneys' fees and costs associated with this appeal up to a maximum of $3,000.00.

## I.

The relevant facts for this appeal are those presented to the jury during the appellant's two-day trial. Danbury is a private aircraft charter company, located in Connecticut. Rodio & Ursillo is a Providence, Rhode Island law firm. Danbury brought this diversity action against Rodio alleging that the firm was liable for four flights chartered in 1988.

---

* Of the District of Massachusetts, sitting by designation.

1. The Honorable Chief Judge Francis J. Boyle, United States District Judge, presiding.

In July 1988, Danbury received a telephone call from a secretary at Rodio & Ursillo by the name of "Patricia" regarding the booking of a flight, for Joseph Rodio. After the flight, Danbury invoiced Rodio & Ursillo for the flight. When the bill was not paid in a timely manner, Danbury contacted Rodio to request payment, and thereafter Danbury received payment for the flight.

In October 1988, Danbury received a call from Rodio & Ursillo about scheduling another charter flight, again from a person identifying herself as "Patricia from Rodio & Ursillo." As with the July flight, Danbury's business records listed Rodio & Ursillo as its customer. After Danbury billed Rodio & Ursillo for the flight, Patricia Knight contacted Danbury and asked that they send the bill to Mr. Lolicata. Subsequently, Patricia Knight arranged three additional flights with Danbury in November and December 1988. After each of the four flights, Danbury sent the original invoice to Rodio & Ursillo, and a copy to Mr. Lolicata.

In addition to her duties as a secretary at the law firm, Patricia Knight was assigned to assist a tenant of the firm, a corporation called FES/CMS and one of its principals, Michael Lolicata. Part of her responsibilities included the scheduling of charter flights for FES/CMS. In making these reservations, no one from Rodio & Ursillo ever informed Danbury that Rodio & Ursillo was acting merely as an agent for FES/CMS. Nor did anyone from Rodio & Ursillo disclose to Danbury before the flights that the law firm was not responsible for the billing. Danbury knew nothing about Michael Lolicata, and it considered Rodio & Ursillo its customer.

After Danbury completed the last flight that Patricia Knight arranged, Rodio & Ursillo sent Danbury a letter which alleged that the scheduling of the four flights was done as a courtesy for Michael Lolicata and that it was not responsible for the flights. Shortly after this letter was sent, Danbury received notification that FES/CMS had filed for bankruptcy in United States Bankruptcy Court. Danbury thereafter filed this diversity suit against Rodio & Ursillo in district court.

The district court submitted Danbury's breach of contract and quantum meruit claims to the jury. After deliberation, the jury returned a general verdict in favor of Danbury for $41,993.80 plus interest, and the district court entered judgment in the amount of $49,851.23. Rodio & Ursillo filed motions for judgment notwithstanding the verdict and a new trial. The district court denied both motions, and the defendant, Rodio & Ursillo now appeals.

## II.

At the outset, we must frame the standard for review of the appellant's claim. Rodio asks for reversal of the jury verdict. In reviewing the jury verdict, we are compelled even in a close case, "to uphold the verdict unless the facts and inferences, when viewed in a light most favorable to the party for whom the jury held, point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have arrived at this conclusion." *Chedd–Angier Production Co. v. Omni Publications Int'l Ltd.,* 756 F.2d 930, 934 (1st Cir.1985); *see also Rodriguez v. Montalvo,* 871 F.2d 163, 165 (1st Cir.1989) (citing *Chedd–Angier Production); Castro v. Stanley Works,* 864 F.2d 961, 963 (1st Cir. 1989).

Thus, in this case Rodio must persuade us that the facts of the case so conclusively point to a verdict in its favor that "fairminded people could not disagree about the outcome." *Chedd–Angier Production,* 756 F.2d at 934. In light of this rigorous standard, we shall now discuss the appellant's claims.

■ The first issue on appeal is whether the district court erred by not adopting Rodio's proposed instruction on the authority of an agent. Rodio argues that the court committed prejudicial error in refusing to give their proffered agency instruction. Danbury argues that Rodio failed to preserve this issue for appeal by failing to comply with Fed.R.Civ.P. 51. Alternatively, Danbury contends that the dis-

trict court's failure to charge the jury with respect to the authority of an agent did not result in prejudicial error.

Fed.R.Civ.P. 51 provides: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objections." This Court has consistently construed Rule 51 to require that objections to the instructions be raised after the charge to the jury, in order to give the trial judge an opportunity to correct the error. *See Castrignano v. E.R. Squibb & Sons, Inc.*, 900 F.2d 455, 460 (1st Cir.1990); *Smith v. Massachusetts Inst. of Technology*, 877 F.2d 1106, 1109 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989).

We have also construed the Rule's requirement that a party must object "before the jury returns to consider its verdict" to mean that the objection must be made after the charge is given to the jury, not before. *Smith*, 877 F.2d at 1109–10; *Coy v. Simpson Marine Safety Equip. Inc.*, 787 F.2d 19, 26 (1st Cir.1986); *McGrath v. Spirito*, 733 F.2d 967, 968 (1st Cir.1984); *Carrillo v. Sameit Westbulk*, 514 F.2d 1214, 1219 (1st Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 385 (1975). Firm adherence to this requirement effectuates the purpose of the Rule, which is to give the trial judge an opportunity to correct any error before the jury retires to deliberate, and not to follow this Rule impedes this Court in making a determination whether the trial judge was in fact given such an opportunity. *Coy*, 787 F.2d at 26. *See also Smith*, 877 F.2d at 1109–10; *Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 809 (1st Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988); *Gay v. P.K. Lindsay Co.*, 666 F.2d 710, 712 (1st Cir.1981), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982).

It is clear from the record that no objection was made by Rodio after the charge regarding the issue of the court's failure to give the proffered agency instruction. It is true that prior to the charge there was a general discussion of the proposed instruction and defense counsel did object to the form of the instruction, but this untimely objection does not satisfy the strictures of Rule 51. The district judge even reminded counsel before the instructions were given that failure to renew the objections after the charge would result in loss of the objection on appeal. (Tr. 221) Objections cannot be carried forward, and Rule 51 is binding on both the court and the attorneys. *See Spirito*, 733 F.2d at 969.

We have recognized a "plain error" exception for failure to follow Rule 51, but it is applied sparingly. This exception is only applied where the error results in a "clear miscarriage of justice" or "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Smith*, 877 F.2d at 1110; *Wells Real Estate*, 850 F.2d at 809.

We have carefully reviewed the entire record of this case and find that no such "plain error" was committed. We find that based on the evidence presented at trial the district court properly rejected the proffered agency instruction. Here, Rodio admitted that Patricia Knight had the actual or apparent authority, as a secretary and office manager of the law firm, to make air charter reservations on behalf of the firm. Further, the district court instructed the jury fully on the agency issue of the case: whether Patricia Knight made the reservations on behalf of Rodio & Ursillo or on behalf of FES/CMS. Thus, after considering the instruction as a whole, we find that the omission of the agency instruction, to which Rodio & Ursillo assigns prejudicial error, did not result in a "clear miscarriage of justice" as to require reversal.

## III.

The second issue on appeal is whether the jury was properly instructed with respect to quantum meruit. Rodio contends that the court erred in failing to state that the law firm must accept "the benefit of" the services in order to recover in quantum meruit. Further, Rodio argues

that the district court's failure to give the proposed instruction on this point necessitates reversal. We, however, disagree.

■■■ In reviewing the district court's refusal to give the proposed instruction, this Court will examine whether the instruction tended to confuse or mislead the jury on the controlling issues of the case. *See Lodge v. Shell Oil Co.*, 747 F.2d 16, 19 (1st Cir.1984); *Service Merchandise Co. v. Boyd Corp.*, 722 F.2d 945, 950 (1st Cir. 1983); *Harrington v. United States*, 504 F.2d 1306, 1315 (1st Cir.1974). Further, a judgment will not be reversed for error unless, after review of the record as a whole, the error is determined to have been prejudicial. *Brown v. Freedman Baking Co.*, 810 F.2d 6, 9–10 (1st Cir.1987); *Almonte v. National Union Fire Ins. Co.*, 787 F.2d 763, 767 (1st Cir.1986). The fairness of the charge cannot be determined by considering only a portion of the charge in isolation—the entire instruction must be examined. *Charles A. Wright, Inc. v. F.D. Rich Co.*, 354 F.2d 710, 713–14 (1st Cir.), *cert. denied*, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673, *reh'g denied*, 385 U.S. 890, 87 S.Ct. 14, 17 L.Ed.2d 122 (1966). In light of this standard, the district court did not err in omitting the phrase "the benefit of" in the proposed instruction on quantum meruit.

First, considered as a whole, the instruction given by the district court was clear and had no tendency to confuse and mislead the jury.[2] Rodio's proposed instruction, however, given the agency relationship between Rodio and FES/CMS, had the potential to confuse and mislead the jury. The proposed instruction would have required the district court to define the ambiguous term "benefit of" in light of the facts of the case and the quantum meruit claim. This would have unnecessarily distracted the jury from the central elements of the quantum meruit claim. Thus, in the specific context of the agency relationship found in this case, the district court did not err in refusing to include the phrase "the benefit of" in the requested quantum meruit instruction. Furthermore, the instruction given by the district court was cast in understandable straightforward terms and fully appraised the jury of the applicable principles of law.

Second, as the instruction given properly stated Rhode Island law, the district court's refusal to give the instruction as proposed was not prejudicial. Rodio argues that Rhode Island law requires that they actually receive the economic benefit of the services in order for Danbury to recover in quantum meruit. The case law cited by Rodio & Ursillo, however, does not require that the benefit necessarily be economic nor does it address the agent/principal situation present in this case. *See National Chain Co. v. Campbell*, 487 A.2d 132, 135 (R.I.1985) (homeowner must have received some benefit from the services of the building contractor for the contractor to recover in quantum meruit); *R & B Electric Co. v. Amco Constr. Co.*, 471 A.2d 1351, 1355–56 (R.I.1984) (subcontractor must have conferred a benefit upon the construction company in order to recover in quantum meruit).

The precise issue of whether an agent must receive "the benefit of the services" or "just receive the services" to recover under quantum meruit has not been addressed by the Rhode Island courts. Other states, however, including those of New York and California, have addressed this issue and held that the party requesting that a service be performed is considered to have had a benefit conferred on him or her if performance was rendered at his or her request to a third person. *See, e.g., Ear-*

---

2. The instruction as proposed by Rodio & Ursillo, read in relevant part as follows:

If you find from a preponderance of the evidence that plaintiff rendered services to the defendant, at the defendant's request, and that the defendant accepted the benefit of the services, then you must award the plaintiff the fair and reasonable value of the services rendered.

The district court, however, deleted the words "the benefit of," and read the following charge to the jury:

If you find from a preponderance of the evidence that plaintiff rendered services to the defendant, at the defendant's request, and that the defendant accepted the services, then you must award the plaintiff the fair and reasonable value of the services rendered.

*hart v. William Low Co.,* 25 Cal.3d 503, 158 Cal.Rptr. 887, 891–92, 600 P.2d 1344, 1348–49 (1979) (plaintiff may recover in quantum meruit although the services did not directly benefit the requesting party); *Williams v. Dougan,* 175 Cal.App.2d 414, 418, 346 P.2d 241, 244 (4th Dist.1959) (where the defendant requests services, the law presumes and implies an agreement to pay the reasonable value of the services despite the existence of a benefit to the defendant); *Farash v. Sykes Datatronics, Inc.,* 59 N.Y.2d 500, 506, 465 N.Y.S.2d 917, 920, 452 N.E.2d 1245, 1248 (1983) (plaintiff may recover in quantum meruit whether or not defendant requesting the services in any way benefited from the performance); *Furgang v. Lenefsky, Meier & Novod,* 486 N.Y.S.2d 46, 46, 109 A.D.2d 728, 728 (2d Dept.1985) (law firm held liable in quantum meruit action brought by an expert despite the fact the law firm's client was the party who actually derived the benefit of the expert's services); *see also Nogales Serv. Center v. Atlantic Richfield Co.,* 126 Ariz. 133, 138–39, 613 P.2d 293, 298 (Ct.App. 1980) (benefit to defendant may be legal or economic).

After careful consideration of the arguments advanced by the parties and a careful examination of the existing law, we find that Rhode Island would adopt the position that an agent requesting services receives a legal benefit regardless of who actually receives the economic benefit of the services performed. Several factors lead us to adopt this position. First, Section 1 of the Restatement of Restitution provides that a person who has been unjustly enriched at the expense of another is required to make restitution. Restatement of Restitution § 1 (1927). A person is enriched if he or she has received a benefit. *Id.* § 1, comment a. A person confers a benefit upon another if he "performs services to or at the request of the other." *Id.* Thus, the Restatement recognizes that the performance of services at another's request constitutes a benefit such that an obligation to make restitution may arise.

Moreover, the Restatement (Second) of Contracts, Section 370 also addresses the subject of restitution and the requirement that a benefit be conferred. Restatement (Second) of Contracts § 370 (1979). Section 370 provides that the party requesting that a service be performed is considered to have had a benefit conferred on him or her if "a performance was rendered at his request to a third person." *Id.* § 370, comment a. Thus, although the defendant did not receive any economic gain as a result of a requested service, the plaintiff may still recover for the value of the services rendered. This is because the defendant has received a legal benefit. Under Section 370, if a service is bargained for by the requesting party, it is deemed to be of value to him even if he does not receive any economic gain as a result. *Id.; see also* Restatement of Contracts § 348, comment a (1932) (a benefit is deemed to have been received by the defendant if the plaintiff has rendered the performance requested by the defendant as part of an agreed exchange). This position is also supported by Professors Calamari and Perillo, in their recent treatise on contracts:

> The plaintiff recovers the reasonable value of his performance whether or not the defendant in any economic sense benefitted from the performance. If what the plaintiff has done is part of the agreed upon exchange, it is deemed to be received by the defendant.

J. Calamari & J. Perillo, *Contracts* § 15–4 (3d ed. 1987).

Lastly, in cases involving services, courts implied an obligation to pay based on the theory that performance at another's request itself constitutes a benefit, regardless of who actually received the economic benefit of the services. *See, e.g., Earhart,* 158 Cal.Rptr. at 891–92, 600 P.2d at 1348–49; *Sykes,* 59 N.Y.2d at 506, 465 N.Y.S.2d at 920, 452 N.E.2d at 1248; *Furgang,* 486 N.Y.S.2d at 46, 109 A.D.2d at 728.

■ In this case, Danbury performed the work under the agreement with Rodio. It expected to be paid by Rodio. Danbury had no direct dealings with FES/CMS. An agent cannot escape liability when the agent fails to disclose the existence of a principal who actually received the benefit

of the services performed. Thus, in light of the agency situation and these equitable doctrines, we conclude the district court acted within its discretion, and its refusal to give the requested quantum meruit instruction did not result in prejudicial error requiring reversal.

## IV.

■ Finally, appellee-Danbury has requested that we assess Rodio & Ursillo costs and attorneys' fees pursuant to Fed. R.App.P. 38, as a sanction against Rodio & Ursillo for bringing what it alleges is a meritless appeal.

■ The purpose of Rule 38 is to discourage litigants from wasting the time and resources of both their opponents and the judicial system with arguments that are without merit. *E.H. Ashley & Co. v. Wells Fargo Alarm Serv.,* 907 F.2d 1274, 1280 (1st Cir.1990); *Lozano v. Banco Central Y Economias,* 865 F.2d 15, 16 (1st Cir.1989). Sanctions have also been imposed when the overwhelming weight of authority was against the appellant's position, or where the appellant could set forth no facts to support his position. *Applewood Landscape & Nursery Co. v. Hollingsworth,* 884 F.2d 1502, 1508–19 (1st Cir. 1989); *Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468, 472 (1st Cir. 1985) (court awarded double costs and attorneys' fees because a "minimal amount of research, even a cursory reading of the relevant case law" should have revealed that the appellant's legal position was without merit).

■ This Court may exercise its power to award attorney's fees even though the suit was not brought in subjective bad faith nor was it motivated by malice. *Wells Fargo,* 907 F.2d at 1280. Rather, it is enough that the appellant *"should* have been aware that the appeal had no chance of success." *Id.* (emphasis in original); *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64, 74 (1st Cir.1984). This circuit has also held an appeal to be frivolous when the appellant should have realized the weakness of his legal position. *Wells Fargo,*

907 F.2d at 1280; *Applewood Landscape,* 884 F.2d at 1508.

Rodio's appeal in this case is wholly without merit because the result was obvious. First, after a thorough reading of the trial transcript and case law, Rodio should have recognized that its claim regarding the agency instructions was precluded by noncompliance with Fed.R.Civ.P. 51. Similarly, the appellant's second claim that the trial judge erred in not giving the proffered quantum meruit instruction to the jury is also without merit. None of the cases cited by the appellant involve a principal/agent situation, and therefore Rodio's argument is not sufficient to warrant an extension of existing law. Thus, because Rodio had no legitimate grounds for pursuing this appeal, appellant is directed to pay Danbury's costs and all reasonable attorneys' fees up to a maximum of $3,000.00, associated with this appeal.

In sum, the judgment of the district court is affirmed. Costs and reasonable attorneys' fees incurred by Danbury in defending against this appeal, up to a maximum of $3,000.00, are assessed against the appellant, Rodio & Ursillo.