[NOT FOR PUBLICATION]



No. 96-1465

TABER PARTNERS I,
A NEW YORK GENERAL PARTNERSHIP,

Plaintiff, Appellant,

v.

MERIT BUILDERS, INC., A PUERTO RICO CORPORATION, ET AL.,

Defendants, Appellees.



No. 96-1466

TABER PARTNERS I,
A NEW YORK GENERAL PARTNERSHIP,

Plaintiff, Appellant,

v.

MERIT BUILDERS, INC., A PUERTO RICO CORPORATION, ET AL.,

Defendants, Appellees.



No. 96-1467

TABER PARTNERS I,
A NEW YORK GENERAL PARTNERSHIP,

Plaintiff, Appellee,

v.

MERIT BUILDERS, INC., A PUERTO RICO CORPORATION, ET AL.,

Defendants, Appellees,



DESARROLLOS METROPOLITANOS, S.E.,

Third Party Defendant, Appellant.



APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. District Judge]



Before

Selya, Circuit Judge,

Coffin and Bownes, Senior Circuit Judges.



Arch Y.  Stokes with whom Stokes  & Murphy, Ruben  T. Nigaglioni and
McConnell & Valdes were on brief for plaintiff, appellant Taber Partners
I.
Eric  A.  Tulla with whom Rivera,  Tulla  &  Ferrer, Woods  &  Woods,
Raffle F. Ojeda-Colon were on brief for defendants, appellees and cross-
appellants, Merit Builders, Inc., and Merit Builders, S.E., Harold  D.
Vincente, with whom Vincente  &  Cuebas, was on brief for appellee
Insurance Company of North America.
Humberto  Guzman-Rodriguez with whom Fiddler,  Gonzalez  &  Rodriguez
were on brief for third-party defendant, appellant Desarrollos
Metropolitanos, S.E.



JULY 31, 1997


BOWNES, Senior  Circuit  Judge. This breach of

contract case is a product of the renovation and expansion of

the Ambassador Plaza Hotel and Casino (formerly a Howard

Johnson Hotel) in San Juan, Puerto Rico. Plaintiff-appellant

Taber Partners I is the owner of the hotel. Its two partners

are A. Eugene Romano and his daughter, Linda Romano.

Defendant-appellee and cross-appellant Merit Builders, Inc. was

the general contractor. John Schlump, one of the two owners of

Merit, directed the construction and reconstruction work on the

hotel.

On January 18, 1989, Taber entered into a "cost-plus"

construction contract with Merit whereby Merit became the

general contractor for the renovation and expansion of the

hotel. Prior to this, Schlump had been retained as a

consultant by Eugene Romano to advise him how to proceed with

the proposed reconstruction and expansion. The "cost-plus"

contract was followed by a fixed price contract; both contracts

were collectively called the Tower contract. A third contract

was entered into by the parties for finish work on the casino,

two restaurants, and the hotel lobby.

On February 20, 1991, Taber filed a complaint in the

federal district court of Puerto Rico alleging breach of

contract by reason of delay, defective performance, and

negligent workmanship. There was also a claim for fraud and

deceit. The complaint was amended twice; the causes of action

-3- 3

remained essentially the same. At some point, it is not clear

from the record just when, Taber sued the Insurance Company of

North America under the performance bond INA issued for the

Tower contract.

Merit brought a counterclaim against Taber alleging

multiple breaches of contract, a claim based on Taber's alleged

delays and changes in the scope and nature of the work

contracted for, and fraud. Merit also brought a third-party

action against Desarrollos Metropolitanos, S.E., the concrete

subcontractor. It brought another third-party complaint

against Victor Torres and Associates, the inspectors of the

work, alleging breach of duty and tortious interference with

the performance of the contracts between Taber and Merit.

After a fourteen-week trial, the jury returned a

verdict finding that Merit was not liable to Taber. It further

found that Taber owed Merit $1,597,414.00 for breach of

contract. We consider Taber's appeal first.

At the close of the evidence, the district court

dismissed Merit's claim against Victor Torres and Associates.

TABER'S APPEAL

Taber forwards two issues on appeal: The ruling of

the district court excluding evidence of the loss of value of

the hotel due to defective construction work; and improper jury

instructions.

-4- 4

The Exclusionary Ruling

We start with the exclusionary ruling. In a pre-

trial order the court ruled that it would not allow evidence as

to the loss of value of the hotel. Taber had two expert

witnesses who would have testified that the reconstruction and

renovation work by Merit was done so incompetently and

defectively that the hotel's value was considerably less than

what it would have been had it been done properly.

At the start of its specific instructions the court

told the jury:

Taber Partners I claims that Merit
Builders, Inc. breached all contracts
entered into for the renovation and
expansion of the Ambassador Plaza Hotel
and Casino by failing to properly
construct the building and by failing to
complete the project in time. As a
result, plaintiff claims that it suffered
damages suffered [sic] due to alleged
construction defects and time delays for
which it seeks to recover the total sum of
$3,730,995 from Merit.

This was an accurate statement of Taber's claims.

The jury answered the following questions on Merit's

liability:

PART A: Taber's claim against Merit for
breach of contract

Question 1A.

Do you find that under the Lump Sum
Tower Contract Merit failed to perform its
duties and obligations or in any other way
breached its contract with Taber by
failing to comply with the plans and
specifications?

-5- 5

. . . 

Question 3A.

Do you find that under the Specialty
Contract Merit failed to perform its
duties or in any other way breached its
contract with Taber by failing to comply
with the plans and specifications?

. . .

Question 5A.

Do you find that under the Cost Plus
Contract Merit failed to perform its
duties or in any other way breached its
contract with Taber by failing to follow
the plans and specifications?

These jury findings establish beyond peradventure

that Merit was not liable to Taber for breach of contract,

which was the basis of Taber's claims against Merit. 

We have read the transcript testimony of all

witnesses who testified on behalf of Taber. The record shows

that there was a plethora of evidence from which the jury could

have found liability, if it believed any of the witnesses. But

it chose not to do so. If any principle is embedded firmly in

our law it is that the jury is the final arbiter of the facts

and credibility decisions are exclusively within its domain.

Another firmly established legal rule is that a

finding of liability must precede any finding of damages.

-6- 6

Taber seeks to avoid this rule by arguing that "the Judge

erroneously forced Taber to argue liability without being

permitted to prove damages; it is the rare jury that will find

liability when it cannot appreciate that the plaintiff has

suffered damage." Taber's Brief at 20. This argument is

belied by the record. The court allowed in evidence all

damages claimed by Taber except that of the value of the hotel

and those that were duplicative.

Randall Redman, an expert witness called by Taber,

testified that, after inspecting the project, he told Eugene

Romano that the only way to achieve a quality building that

would last would be to tear the building down and start all

over.

During the testimony of Eugene Romano it was

stipulated as follows:

If the jury finds that there was a
delay by Merit in the performance of any
of the contracts, the parties agree that
there is a $2,000 liquidated damages
provision per day, per contract, which
includes the specialty contract. That is
to say, the work for the casino,
restaurant and lobby, plus and also the
tower contract.

The cost-plus contract is
specifically not made a part of this
stipulation as it had no time limit in
which it was supposed to be complete.

Eldon Gayle Tipping, another of Taber's experts,

testified that the cost to repair this project would be in

excess of the original contract price. He testified

-7- 7

specifically that the damages due to defective concrete work

were $1,353,703.00.

Victor Torres, a civil engineer, was retained to

settle disputes between the parties and issue certificates of

payment. He testified extensively about change orders and

"deductive" change orders. A "deductive" change order results

in a decrease of the amount due for a specific contract change.

Torres testified that he allowed $856,944.90 in deductive

change orders out of $3,938,228.64 claimed by Taber.

The most extensive testimony on damages came from

Linda Romano, a partner, with her father, in Taber. She

started her testimony by stating:

The Witness: We sued Merit Builders
because we paid Merit in excess of $12
million to build us a quality hotel within
a specified time and they didn't do it.
And we sued the Insurance Company of North
America because they promised the
performance, they secured the performance
of Merit under the performance bond.

By Mr. Stokes:

Q Ms. Romano, what are you seeking by
this lawsuit?

A I am asking the jury to find that the
Insurance Company of North America and
Merit Builders should pay us in excess of
three and a half million dollars.

In addition to that, I am asking the
jury to find that we have paid Merit in
full. I am seeking to be made whole,
although I don't believe I can be.

-8- 8

Linda Romano testified for four days on direct

examination. She explained the defects in construction. This

part of her testimony was amplified by numerous photographs,

which were admitted in evidence. Ms. Romano took over 2,000

photos of the work in progress. Romano gave specific costs of

change orders and deductive change orders. She concluded her

testimony by summarizing the amount due Taber for defective

work and time delays -- $3,730,995.00. This was the figure

given by the court in its instructions to the jury as to the

amount Taber claimed in damages.

Despite the argumentative rhetoric in Taber's brief,

the record makes it abundantly clear that the jury was fully

informed as to the construction defects alleged by Taber and

its claim for the costs of correcting them. The district court

allowed 98% of the evidence offered by Taber to be presented to

the jury. This is not a case of a trial judge being technical

and limiting in his evidentiary rulings. Taber received an

eminently fair trial. It cannot now seize upon one adverse

ruling on the preclusion of certain evidence on damages to

overturn the jury's findings that Merit was not liable to Taber

for breach of contract. Such findings preclude, as a matter of

law, any contention on damages.

The Jury Instructions

We state this issue as it is worded in Taber's brief 

-9- 9

at page 3:

The District Court, in this case
arising from faulty hotel construction,
reversibly erred by improperly instructing
the jury to presume as factually
legitimate the certificates for payment
issued by the inspecting engineer/
architect, Victor Torres, in direct
contravention of the contract language,
yet failing to instruct the jury to assume
as similarly legitimate the deductive
change orders and substantial completion
decisions certified by the same
individual.

This plaint founders on the same barrier reef as did

Taber's argument excluding one of its claims for damages -- the

jury findings of no liability.

We also point out that in this circuit objections to

jury instructions cannot be properly preserved unless a party

objects after the charge and before the jury has retired to

consider the case. The mandate of Fed. R. Civ. P. 51 is stated

as follows:

No party may assign as error the giving or
the failure to give an instruction unless
that party objects thereto before the jury
retires to consider its verdict, stating
distinctly the matter objected to and the
grounds  of  the  objection. Opportunity
shall be given to make the objection out
of the hearing of the jury. (Emphasis
added).

We have construed this to mean what it says. Objections to

jury instructions must be stated fully after the charge and

before the jury retires regardless of any pre-charge

objections. See  Senra v. Cunningham , 9 F.3d 168, 171 (1st Cir.

-10- 10

1993); Elgabri v. Lekas, 964 F.2d 1255, 1259 (1st Cir. 1992);

Transnational  Corp.  v.  Rodio  &  Ursillo,  Ltd., 920 F.2d 1066,

1069 (1st Cir. 1990). Failure to follow our regime results in

a plain error analysis.

After the charge the court invited counsel to the

bench. All counsel except Taber's made detailed objections on

the record. The only thing counsel for Taber said was: "Same

comments as yesterday, Your Honor." This was not sufficient

under Fed. R. Civ. P. 51 and our case law.

We have read the jury instructions carefully and find

no plain error. In fact, we think the jury instructions

explained this difficult, complex, and lengthy case clearly and

fairly to the jury.

MERIT'S COUNTERCLAIM

Fraud

Merit objects to the pre-trial dismissal of its fraud

claim against Taber. The record discloses the following pre-

trial order:

Finally, during the Pretrial
Conference, the parties discussed with the
Court the fraud claims presented by Taber
and Merit in the Second Amended Complaint
and the Counterclaim. Both parties agreed
that  these  fraud  allegations  lack  the
requisite  specificity  detailed  under
Rule 9(b)  of  the  Federal  Rules  of  Civil
Procedure. However, neither party brought
this issue to the Court's attention before
the Pretrial Conference. In light of the
parties' admissions during the Conference,
and after close examination of the
complaint and the counterclaim, the Court

-11- 11

will not allow evidence or allegations of
fraud to be made during Trial by either
party. (Emphasis added).

In light of Merit's agreement that its fraud allegations lacked

the specificity required under Fed. R. Civ. P. 9(b), Merit is

foreclosed from objecting to the exclusion of its fraud claim.

Moreover, we have read the entire counterclaim carefully and it

is obvious that Merit did not rely on any of the fraudulent

acts alleged. Reliance was not alleged in the fraud claim.

This was a breach of contract case. Merit's answer and

counterclaim make it evident that its defense to the breach of

contract claim was that it met its contract obligations and was

owed money by Taber (which the jury found to be true).

Dismissal of Merit's Contract Claims

Merit objects to two other pre-trial rulings:

(1) the preclusion of damages compensable in the "construction

context" of this case; (2) the preclusion of damages from

Taber's delays and changes in the nature and scope of the work

contracted.

As we understand it from Merit's brief at page 48,

Merit claims that in addition to the amount awarded it by the

jury for unpaid change orders and other specified claims, it

has a claim for "disruptions and resulting damages" in the

amount of two million dollars. Id.

The answer to this claim comes from the record.

During the trial, Merit attempted through a blow-up to

-12- 12

introduce evidence of damages for general overhead, general

field conditions, acceleration costs, and delay damages. The

court excluded the claim for three reasons. We need go no

further than the first:

First, for the pretrial conference on
February 28, 1995, the Court ordered the
parties to submit an itemization of all
damages to be claimed at trial. Merit
submitted its itemized list of damages by
motion dated February 28, 1995. During
said conference Merit discussed with the
Court all of the claims it wanted to
present at trial and never mentioned the
claims brought to the Court's attention
yesterday.

Merit waived its claim to the additional damages

sought by its failure to submit them in accord with the pre-

trial order of the court.

The jury's findings that Merit was not liable to

Taber nullified the two third-party claims brought by Merit.

The judgment of the district court is Affirmed.

Costs on appeal are against Taber.

-13- 13