USCA1 Opinion

 

 [NOT FOR PUBLICATION] ____________________ No. 96-1465 TABER PARTNERS I, A NEW YORK GENERAL PARTNERSHIP, Plaintiff, Appellant, v. MERIT BUILDERS, INC., A PUERTO RICO CORPORATION, ET AL., Defendants, Appellees. ____________________ No. 96-1466 TABER PARTNERS I, A NEW YORK GENERAL PARTNERSHIP, Plaintiff, Appellant, v. MERIT BUILDERS, INC., A PUERTO RICO CORPORATION, ET AL., Defendants, Appellees. ____________________ No. 96-1467 TABER PARTNERS I, A NEW YORK GENERAL PARTNERSHIP, Plaintiff, Appellee, v. MERIT BUILDERS, INC., A PUERTO RICO CORPORATION, ET AL., Defendants, Appellees, ____________________ DESARROLLOS METROPOLITANOS, S.E., Third Party Defendant, Appellant. _______________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ____________________ Before Selya, Circuit Judge, Coffin and Bownes, Senior Circuit Judges. ____________________ Arch Y.  Stokes with whom Stokes  & Murphy, Ruben  T. Nigaglioni and McConnell & Valdes were on brief for plaintiff, appellant Taber Partners I. Eric  A.  Tulla with whom Rivera,  Tulla  &  Ferrer, Woods  &  Woods, Raffle F. Ojeda-Colon were on brief for defendants, appellees and cross- appellants, Merit Builders, Inc., and Merit Builders, S.E., Harold  D. Vincente, with whom Vincente  &  Cuebas, was on brief for appellee Insurance Company of North America. Humberto  Guzman-Rodriguez with whom Fiddler,  Gonzalez  &  Rodriguez were on brief for third-party defendant, appellant Desarrollos Metropolitanos, S.E. ____________________ JULY 31, 1997 ____________________ BOWNES, Senior  Circuit  Judge. This breach of contract case is a product of the renovation and expansion of the Ambassador Plaza Hotel and Casino (formerly a Howard Johnson Hotel) in San Juan, Puerto Rico. Plaintiff-appellant Taber Partners I is the owner of the hotel. Its two partners are A. Eugene Romano and his daughter, Linda Romano. Defendant-appellee and cross-appellant Merit Builders, Inc. was the general contractor. John Schlump, one of the two owners of Merit, directed the construction and reconstruction work on the hotel. On January 18, 1989, Taber entered into a "cost-plus" construction contract with Merit whereby Merit became the general contractor for the renovation and expansion of the hotel. Prior to this, Schlump had been retained as a consultant by Eugene Romano to advise him how to proceed with the proposed reconstruction and expansion. The "cost-plus" contract was followed by a fixed price contract; both contracts were collectively called the Tower contract. A third contract was entered into by the parties for finish work on the casino, two restaurants, and the hotel lobby. On February 20, 1991, Taber filed a complaint in the federal district court of Puerto Rico alleging breach of contract by reason of delay, defective performance, and negligent workmanship. There was also a claim for fraud and deceit. The complaint was amended twice; the causes of action -3- 3 remained essentially the same. At some point, it is not clear from the record just when, Taber sued the Insurance Company of North America under the performance bond INA issued for the Tower contract. Merit brought a counterclaim against Taber alleging multiple breaches of contract, a claim based on Taber's alleged delays and changes in the scope and nature of the work contracted for, and fraud. Merit also brought a third-party action against Desarrollos Metropolitanos, S.E., the concrete subcontractor. It brought another third-party complaint against Victor Torres and Associates, the inspectors of the work, alleging breach of duty and tortious interference with the performance of the contracts between Taber and Merit. After a fourteen-week trial, the jury returned a verdict finding that Merit was not liable to Taber. It further found that Taber owed Merit $1,597,414.00 for breach of contract. We consider Taber's appeal first. At the close of the evidence, the district court dismissed Merit's claim against Victor Torres and Associates. TABER'S APPEAL Taber forwards two issues on appeal: The ruling of the district court excluding evidence of the loss of value of the hotel due to defective construction work; and improper jury instructions. -4- 4 The Exclusionary Ruling We start with the exclusionary ruling. In a pre- trial order the court ruled that it would not allow evidence as to the loss of value of the hotel. Taber had two expert witnesses who would have testified that the reconstruction and renovation work by Merit was done so incompetently and defectively that the hotel's value was considerably less than what it would have been had it been done properly. At the start of its specific instructions the court told the jury: Taber Partners I claims that Merit Builders, Inc. breached all contracts entered into for the renovation and expansion of the Ambassador Plaza Hotel and Casino by failing to properly construct the building and by failing to complete the project in time. As a result, plaintiff claims that it suffered damages suffered [sic] due to alleged construction defects and time delays for which it seeks to recover the total sum of $3,730,995 from Merit. This was an accurate statement of Taber's claims. The jury answered the following questions on Merit's liability: PART A: Taber's claim against Merit for breach of contract Question 1A. Do you find that under the Lump Sum Tower Contract Merit failed to perform its duties and obligations or in any other way breached its contract with Taber by failing to comply with the plans and specifications? -5- 5 . . .  Question 3A. Do you find that under the Specialty Contract Merit failed to perform its duties or in any other way breached its contract with Taber by failing to comply with the plans and specifications? . . . Question 5A. Do you find that under the Cost Plus Contract Merit failed to perform its duties or in any other way breached its contract with Taber by failing to follow the plans and specifications? These jury findings establish beyond peradventure that Merit was not liable to Taber for breach of contract, which was the basis of Taber's claims against Merit.  We have read the transcript testimony of all witnesses who testified on behalf of Taber. The record shows that there was a plethora of evidence from which the jury could have found liability, if it believed any of the witnesses. But it chose not to do so. If any principle is embedded firmly in our law it is that the jury is the final arbiter of the facts and credibility decisions are exclusively within its domain. Another firmly established legal rule is that a finding of liability must precede any finding of damages. -6- 6 Taber seeks to avoid this rule by arguing that "the Judge erroneously forced Taber to argue liability without being permitted to prove damages; it is the rare jury that will find liability when it cannot appreciate that the plaintiff has suffered damage." Taber's Brief at 20. This argument is belied by the record. The court allowed in evidence all damages claimed by Taber except that of the value of the hotel and those that were duplicative. Randall Redman, an expert witness called by Taber, testified that, after inspecting the project, he told Eugene Romano that the only way to achieve a quality building that would last would be to tear the building down and start all over. During the testimony of Eugene Romano it was stipulated as follows: If the jury finds that there was a delay by Merit in the performance of any of the contracts, the parties agree that there is a $2,000 liquidated damages provision per day, per contract, which includes the specialty contract. That is to say, the work for the casino, restaurant and lobby, plus and also the tower contract. The cost-plus contract is specifically not made a part of this stipulation as it had no time limit in which it was supposed to be complete. Eldon Gayle Tipping, another of Taber's experts, testified that the cost to repair this project would be in excess of the original contract price. He testified -7- 7 specifically that the damages due to defective concrete work were $1,353,703.00. Victor Torres, a civil engineer, was retained to settle disputes between the parties and issue certificates of payment. He testified extensively about change orders and "deductive" change orders. A "deductive" change order results in a decrease of the amount due for a specific contract change. Torres testified that he allowed $856,944.90 in deductive change orders out of $3,938,228.64 claimed by Taber. The most extensive testimony on damages came from Linda Romano, a partner, with her father, in Taber. She started her testimony by stating: The Witness: We sued Merit Builders because we paid Merit in excess of $12 million to build us a quality hotel within a specified time and they didn't do it. And we sued the Insurance Company of North America because they promised the performance, they secured the performance of Merit under the performance bond. By Mr. Stokes: Q Ms. Romano, what are you seeking by this lawsuit? A I am asking the jury to find that the Insurance Company of North America and Merit Builders should pay us in excess of three and a half million dollars. In addition to that, I am asking the jury to find that we have paid Merit in full. I am seeking to be made whole, although I don't believe I can be. -8- 8 Linda Romano testified for four days on direct examination. She explained the defects in construction. This part of her testimony was amplified by numerous photographs, which were admitted in evidence. Ms. Romano took over 2,000 photos of the work in progress. Romano gave specific costs of change orders and deductive change orders. She concluded her testimony by summarizing the amount due Taber for defective work and time delays -- $3,730,995.00. This was the figure given by the court in its instructions to the jury as to the amount Taber claimed in damages. Despite the argumentative rhetoric in Taber's brief, the record makes it abundantly clear that the jury was fully informed as to the construction defects alleged by Taber and its claim for the costs of correcting them. The district court allowed 98% of the evidence offered by Taber to be presented to the jury. This is not a case of a trial judge being technical and limiting in his evidentiary rulings. Taber received an eminently fair trial. It cannot now seize upon one adverse ruling on the preclusion of certain evidence on damages to overturn the jury's findings that Merit was not liable to Taber for breach of contract. Such findings preclude, as a matter of law, any contention on damages. The Jury Instructions We state this issue as it is worded in Taber's brief  -9- 9 at page 3: The District Court, in this case arising from faulty hotel construction, reversibly erred by improperly instructing the jury to presume as factually legitimate the certificates for payment issued by the inspecting engineer/ architect, Victor Torres, in direct contravention of the contract language, yet failing to instruct the jury to assume as similarly legitimate the deductive change orders and substantial completion decisions certified by the same individual. This plaint founders on the same barrier reef as did Taber's argument excluding one of its claims for damages -- the jury findings of no liability. We also point out that in this circuit objections to jury instructions cannot be properly preserved unless a party objects after the charge and before the jury has retired to consider the case. The mandate of Fed. R. Civ. P. 51 is stated as follows: No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds  of  the  objection. Opportunity shall be given to make the objection out of the hearing of the jury. (Emphasis added). We have construed this to mean what it says. Objections to jury instructions must be stated fully after the charge and before the jury retires regardless of any pre-charge objections. See  Senra v. Cunningham , 9 F.3d 168, 171 (1st Cir. -10- 10 1993); Elgabri v. Lekas, 964 F.2d 1255, 1259 (1st Cir. 1992); Transnational  Corp.  v.  Rodio  &  Ursillo,  Ltd., 920 F.2d 1066, 1069 (1st Cir. 1990). Failure to follow our regime results in a plain error analysis. After the charge the court invited counsel to the bench. All counsel except Taber's made detailed objections on the record. The only thing counsel for Taber said was: "Same comments as yesterday, Your Honor." This was not sufficient under Fed. R. Civ. P. 51 and our case law. We have read the jury instructions carefully and find no plain error. In fact, we think the jury instructions explained this difficult, complex, and lengthy case clearly and fairly to the jury. MERIT'S COUNTERCLAIM Fraud Merit objects to the pre-trial dismissal of its fraud claim against Taber. The record discloses the following pre- trial order: Finally, during the Pretrial Conference, the parties discussed with the Court the fraud claims presented by Taber and Merit in the Second Amended Complaint and the Counterclaim. Both parties agreed that  these  fraud  allegations  lack  the requisite  specificity  detailed  under Rule 9(b)  of  the  Federal  Rules  of  Civil Procedure. However, neither party brought this issue to the Court's attention before the Pretrial Conference. In light of the parties' admissions during the Conference, and after close examination of the complaint and the counterclaim, the Court -11- 11 will not allow evidence or allegations of fraud to be made during Trial by either party. (Emphasis added). In light of Merit's agreement that its fraud allegations lacked the specificity required under Fed. R. Civ. P. 9(b), Merit is foreclosed from objecting to the exclusion of its fraud claim. Moreover, we have read the entire counterclaim carefully and it is obvious that Merit did not rely on any of the fraudulent acts alleged. Reliance was not alleged in the fraud claim. This was a breach of contract case. Merit's answer and counterclaim make it evident that its defense to the breach of contract claim was that it met its contract obligations and was owed money by Taber (which the jury found to be true). Dismissal of Merit's Contract Claims Merit objects to two other pre-trial rulings: (1) the preclusion of damages compensable in the "construction context" of this case; (2) the preclusion of damages from Taber's delays and changes in the nature and scope of the work contracted. As we understand it from Merit's brief at page 48, Merit claims that in addition to the amount awarded it by the jury for unpaid change orders and other specified claims, it has a claim for "disruptions and resulting damages" in the amount of two million dollars. Id. The answer to this claim comes from the record. During the trial, Merit attempted through a blow-up to -12- 12 introduce evidence of damages for general overhead, general field conditions, acceleration costs, and delay damages. The court excluded the claim for three reasons. We need go no further than the first: First, for the pretrial conference on February 28, 1995, the Court ordered the parties to submit an itemization of all damages to be claimed at trial. Merit submitted its itemized list of damages by motion dated February 28, 1995. During said conference Merit discussed with the Court all of the claims it wanted to present at trial and never mentioned the claims brought to the Court's attention yesterday. Merit waived its claim to the additional damages sought by its failure to submit them in accord with the pre- trial order of the court. The jury's findings that Merit was not liable to Taber nullified the two third-party claims brought by Merit. The judgment of the district court is Affirmed. Costs on appeal are against Taber. -13- 13