Frank TOSCANO, Plaintiff, Appellee,

v.

CHANDRIS, S.A., et al.,
Defendants, Appellants.

No. 90–2119.

United States Court of Appeals,
First Circuit.

Heard May 8, 1991.

Decided June 5, 1991.

Gino A. Zonghetti, New York City, with whom Richard B. Kydd, Brian B. Kydd, Kneeland, Kydd & Handy, Boston, Mass., and Joseph T. Stearns, were on brief, New York City, for defendants, appellants.

Edwin L. Wallace, with whom Arthur P. Skarmeas and Latti Associates, were on brief, Boston, Mass., for plaintiff, appellee.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

SELYA, Circuit Judge.

In this case, the barn door was not locked until well after the horse had departed. Seeing no reason to relieve the appellants from the easily predictable consequences of their own nonchalance, we reject their appeal.

I

Plaintiff-appellee Frank Toscano sued Chandris, S.A. and Fourth Transoceanic Shipping Co. in federal district court pursuant to section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Toscano's suit arose out of injuries sustained in 1987 while he was working aboard a vessel owned and operated by the defendants. At trial, the jury awarded Toscano $345,900 in compensatory damages, plus interest from date of injury to date of verdict at ten percent per annum.

The defendants' appeal concerns the interest increment. They broadly contend "that in no event can pre-judgment interest in any amount be awarded in any ... Section 905(b) case." They then make several subsidiary arguments attacking various aspects of the interest award.

II

Saying that the appellants have come belatedly to their present view is to elevate understatement to an art form. The pertinent chronology is as follows:

1. Plaintiff claimed an entitlement to interest in both his original and amended complaints. Though enumerating half a dozen special defenses in their answers, the defendants did not address the prayer for prejudgment interest.

2. At a pretrial conference held on April 10, 1991, the district court ordered that the parties file requests for jury instructions. When filed, plaintiff's requests included four separate paragraphs, with case citations, specifying how the jurors should go about awarding prejudgment interest if they found in his favor. The defendants requested no other or different instructions anent interest.

3. At the close of the evidence, the defendants moved, orally and in writing, for a directed verdict. They neither referred to the interest issue nor asked to have the issue kept from the jury.

4. The district court charged that it was "within [the jury's] province to award interest on any damages which you award to the plaintiff from the time of the injury to the date of the judgment...." The court also charged that the jury had discretion to set the interest rate. Defendants' counsel did not object to these instructions.

5. The court sent special questions to the jury, Fed.R.Civ.P. 49, including one inquiring whether the jury "wish[ed] to award Mr. Toscano interest on the damage amount from the time of the injury to the present." Defendants' counsel did not object to this interrogatory.

6. The jury fixed damages at $345,900 (comprising $24,900 for medical expenses; $114,000 for lost earning capacity; $83,000 for pain and suffering; $28,000 for future pain and suffering; and $96,000 for future lost earnings). The jury answered the interest question in the affirmative. Because no interest rate was stipulated, the judge queried the jury foreman in open court. The latter responded that "we would like to give ten percent." Throughout, defense counsel sat mute.

7. On October 2, 1990, final judgment was entered. The judgment included interest on the entire verdict amount.

■ We have set out this chronology at some length to illustrate that the defendants—sophisticated litigants represented throughout by privately retained counsel—had every reason to know that the issue of interest was in the case and had numerous opportunities to raise their objections to an award of interest. They made not a murmur. If not before, then certainly when the appellants sat idly by and allowed the court's instructions to the jury to stand unchallenged, they waived the right to press the objections which they now attempt to advance. See Fed.R.Civ.P. 51 ("No party may assign as error the giving

[of] or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); *see also Pinkham v. Burgess,* 933 F.2d 1066, 1069, 1070 (1st Cir.1991) (failure to raise an objection when and as required by Civil Rule 51 works a waiver of the objection); *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 809 (1st Cir.) (same; listing representative First Circuit cases), *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988).

■ The defendants neglected to mention their failure to preserve any objection in their opening brief on appeal. After appellee's brief made the point in telling terms, the defendants addressed it in their reply brief. They argued that the error regarding prejudgment interest was "plain" and "fundamental," and thus, should be excused. We do not agree.

The plain error standard, high in any event, *see United States v. Hunnewell,* 891 F.2d 955, 956 (1st Cir.1989); *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987), is near its zenith in the Rule 51 milieu. At least five times over the years we have quoted the following axiom with manifest approval: "If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." 9 C. Wright & A. Miller, *Federal Practice & Procedure,* § 2558, at 675 (1971), *quoted in Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 568 (1st Cir.1989); *Smith v. Massachusetts Inst. of Technology,* 877 F.2d 1106, 1110 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989); *Wells,* 850 F.2d at 809; *Almonte v. National Union Fire Ins. Co.,* 787 F.2d 763, 769 (1st Cir.1986); *Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir.1976). It strains credulity well past the breaking point to argue that the defendants' self-created plight can fit within so exclusive a classification.

Moreover, to employ the plain error exception in this situation would sow the seeds for a mischievous harvest and would be fundamentally unfair to both the plaintiff and the district court. Rules serve a valuable purpose. Without them, the judicial system would be in shambles. It follows that, in the ordinary case, parties flout well-established rules at their peril. The circumstances of this case are not exceptional and plain error is plainly absent. Hence, we decline the appellants' invitation to bend the rules in order that they might argue points which they repeatedly waived below.

### III

■ In a slightly different (albeit related) vein, the appellants also contend that the judgment entered by the clerk of the district court "mistakenly included [an] award of prejudgment interest ... [on] that part of the damage award ... representing future losses." According to appellants, there can be no award of prejudgment interest on future damages;[1] and in their view, neither the jury nor the trial judge intended interest to be added to that portion of the verdict. This "clerical mistake," they argue, has nothing to do with their failure to object to the charge. Whether or not that is so, the appellants' disregard of other procedural niceties forecloses review of their contention in this proceeding. We explain briefly.

The judgment below was entered on the docket on October 2, 1990. The appellants first raised a specific challenge to what they now characterize as an overgenerous dollop of interest on future damages by filing a motion to amend the judgment on October 29, 1990. That motion was untimely, *see* Fed.R.Civ.P. 59(e) (motions "to alter or amend the judgment shall be served not later than 10 days after entry of the judgment"), and was swiftly rebuffed.

---

**1.** Appellants cite *Hernandez v. M/V Rajaan,* 841 F.2d 582, 590–91 (5th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988), for this proposition. Because the question is not properly before us, *see infra,* we express no opinion on it.

No appeal has been taken from the order denying that motion.

On November 14, 1990, the appeal from the underlying judgment was taken. It was docketed in this court six days later. Notwithstanding the shifted battleground, the appellants returned to the district court on December 28, 1990, this time filing a motion to correct the judgment under Fed. R.Civ.P. 60(a).[2] In a memorandum in support of this motion, the appellants argued that the clerk had entered the judgment "contrary to ruling [sic] by the court;" on that basis, the judgment was alleged to be "the result of 'clerical mistakes' to which [Rule] 60(a) applies." At this point, the district court docket entries become tenebrous. Nevertheless, the parties agree that the district judge, although sympathetic to the appellants' position, proved powerless to effectuate an amendment to the judgment *ex proprio vigore* because the present appeal was pending. The long and short of it is that no amended judgment was issued. The appellants complain that this scenario left them in a trick box, unable to find their way to a forum that would hear their plea. After studying the raddled record, we conclude that the trick box is of appellants' own construction.

If Rule 60(a) was the right vehicle for raising the issue of interest on future damages, then the appellants lose because they waited until after their appeal was docketed and then proceeded in the district court without seeking this court's permission to essay the correction. It is crystal clear that a district court has no power to correct clerical mistakes during the pendency of an appeal except "with leave of the appellate court." Fed.R.Civ.P. 60(a). The appellants never requested leave. The omission rendered their motion a nullity. *See Jusino v. Zayas*, 875 F.2d 986, 990 (1st Cir.1989).

To be sure, it is problematic whether Rule 60(a) afforded the appropriate route for obtaining the relief requested. Matters cognizable under Rule 60(a) are, generally, mechanical in nature. Thus, while mistakes in the *computation* of interest may be correctable by means of a Rule 60(a) motion, "[a]n award of prejudgment interest based upon the deliberate choice of the district judge reflects an interpretation of law which, even if erroneous, cannot be corrected under Rule 60(a)." *Elias v. Ford Motor Co.*, 734 F.2d 463, 466 (1st Cir.1984); *see also Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 153 (1st Cir.1980). The record suggests that this is probably a case of the latter stripe. And if Rule 60(a) was the wrong vehicle for raising the question, the appellants also lose—for they did not properly raise the question in any other way.

Apart from Rule 60(a), the most obvious avenue for relief is Rule 59(e). The appellants allowed the time for acting under that rule to expire, *see supra* p. 385. If, after the time for filing a Rule 59(e) motion has passed, a litigant wishes to have the trial court rectify an interpretive error affecting interest, the next feasible route would appear to be Rule 60(b) (which provides that a party may be relieved from a final judgment on the basis of, *inter alia*, mistake, excusable neglect, or other reasons justifying relief from the judgment's operation).

Appellants' only gesture in the direction of Rule 60(b) was to file a motion in this court on February 7, 1991, requesting that we remand so that the district judge could hold a hearing "[p]ursuant to F.R.Civ.P. 60(b)." We denied this motion on February 19, advising the appellants that, if Rule 60(b) was to be invoked while the case was on appeal, they should follow the procedure limned in *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir.1979) (if an appeal is pending, a Rule 60(b) motion should first be filed in the trial court, and the district judge, if inclined to

---

**2.** The rule provides:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

Fed.R.Civ.P. 60(a).

allow it, may then request remand). The appellants quit at that juncture, never acting on our pointed suggestion that they should learn the *Colocotroni* lesson.[3] In sum, despite being led directly to the authority explaining how Rule 60(b) could be utilized during the pendency of their appeal, the appellants never followed that lead. For present purposes, then, appellants allowed Rule 60(b), like Rules 59(e) and 60(a), to become a dead end.[4]

It may seem hypertechnical to insist on such punctilio, but the web of rules exists for a purpose. If courts did not demand that litigants recognize and respect jurisdictional borders, the judicial system would be adrift in a sea of competing decrees and duplicative proceedings. If courts, having devised procedures for transferring cases back and forth, did not require that litigants follow those procedures, injustice and inefficiency would inevitably result. In this seldom visited corner of federal jurisprudence, where parties desire that a district court conduct further proceedings notwithstanding the pendency of an appeal, a workable set of rules and procedures is in place. Thus, it behooves us to insist on substantial compliance with them. Unenforced rules are no rules at all.

We hold, therefore, that the question of whether the final judgment mistakenly included interest on future damages is not properly before us in this appeal.

## IV

We have one additional obligation to fulfill. "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and ... double costs to the appellee." Fed.R.App.P. 38. So here.

"The purpose of Rule 38 is to discourage litigants from wasting the time and resources of both their opponents and the judicial system with arguments that are without merit." *Transnational Corp. v. Rodio & Ursillo, Ltd.*, 920 F.2d 1066, 1072

(1st Cir.1990). The appellants were guilty of exactly the sort of conduct that Rule 38 was intended to proscribe. In the absence of preserved objections below, it should have been transparently clear upon minimal inquiry that the appellants' chance of success on appeal was infinitesimal. *See, e.g., Wells*, 850 F.2d at 809 (observing that, although there may be a plain error exception to Civil Rule 51, this court has never reversed a civil case on that basis). The "interest on future damages" point had no chance of success, as it was never properly raised. An appeal is frivolous within the purview of Fed.R.App.P. 38 when the appellant's legal position is doomed to failure—and an objectively reasonable litigant should have realized as much from the outset. *See Transnational*, 920 F.2d at 1072; *E.H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1280 (1st Cir.1990). That is true in this case.

We need go no further. Because appellants had no legitimate basis for pursuing this appeal, we direct that appellants and their attorneys pay the sum of $1500 toward Toscano's counsel fees on appeal, along with double costs. As we wrote on an earlier, comparable occasion: "Hope may, as the aphorist would have it, spring eternal; but appeals founded on hope alone, unanchored in law or fact, should not be prosecuted." *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 818 (1st Cir.1987).

*The judgment below is affirmed. The appellee is awarded double costs and counsel fees of $1500.*

---

3. Returning to the equine metaphor with which we began, one can lead a horse to water, but cannot always make the animal drink.

4. We also note that the appellants never filed a new notice of appeal after the district court, in February of 1991, ultimately failed to issue an amended judgment.