LA AMIGA del PUEBLO, INC.,
Plaintiff, Appellant,

v.

Ismael ROBLES, Defendant, Appellee.

No. 90–1801.

United States Court of Appeals,
First Circuit.

Heard June 5, 1991.

Decided June 26, 1991.

Peter John Porrata, Old San Juan, P.R., for plaintiff, appellant.

Hector R. Cuprill with whom Jorge P. Sala, was on brief, Ponce, P.R., for defendant, appellee.

Before SELYA and CYR, Circuit Judges, and KEETON,* District Judge.

SELYA, Circuit Judge.

Having carefully reviewed the record, we believe the matter before us can be appropriately decided on the basis of four familiar verities. (1) The court of appeals will not ordinarily assess the sufficiency of, or weigh, trial evidence absent a preserved motion for a directed verdict or a new trial. (2) The court of appeals, in the face of adequate record support, will not disturb a jury's evaluative judgments, its resolution of evidentiary conflicts, or its choice among plausible, albeit competing, inferences. (3) The court of appeals will not ordinarily turn a sympathetic ear to litigants who, after flouting the imperatives of Fed.R. Civ.P. 51, belatedly complain about the district court's jury instructions. (4) The court of appeals will not hesitate to impose sanctions when appeals are prosecuted without any objectively reasonable basis in law or in fact. Having followed first principles in these respects, we affirm the judgment below and award appellate sanctions to the prevailing party.

* Of the District of Massachusetts, sitting by designation.

## I

The background facts are largely uncontroversial (although the litigants hotly dispute the consequences of, and the inferences properly extractable from, those facts). We succinctly summarize the events at issue, resolving occasional conflicts in favor of the jury verdict.

In the late 1940s or early 1950s, Luis Diaz and two partners opened a furniture store in the Hato Rey section of San Juan and called it "Muebleria La Amiga del Pueblo."[1] In 1953 Diaz acquired the interests of all other partners. Diaz then operated the store as a sole proprietor until 1963, when he and relatives formed a corporation called "La Amiga del Pueblo, Inc." and Diaz informally consented to the corporation's use of the trade name. Over the ensuing quarter-century, more or less, the corporation opened and closed various branches in Hato Rey, Guaynabo, and Bayamon. By 1982, however, the corporation had retrenched. All its outlets, save the main emporium in Hato Rey, were closed by that time. In that year, the Hato Rey store was relocated to the town of Rio Piedras where the plaintiff continues to operate its business.

In 1970, defendant-appellee Ismael Robles purchased a furniture store in the town of Adjuntas, well south of San Juan. This store, too, was called "La Amiga del Pueblo." Defendant claimed to have derived the right to use that name from the heirs of the late Carmelo Maldonado. According to Robles' witnesses, Maldonado commenced doing business in Adjuntas under the disputed trade name in 1950. In 1987, Robles expanded his operations to the city of Ponce, a municipality near Adjuntas. The incursion into Ponce was the straw that broke the dromedary's back. Approximately two years later, La Amiga del Pueblo, Inc. sued Robles for unfair competition in federal district court. Robles denied the charges, contending that the Ponce/Adjuntas market area was completely distinct from the San Juan/Hato Rey/Rio Piedras market area; that furniture stores in the two regions were not in competition in any meaningful way; that there was no cognizable risk of customer or supplier confusion; that Diaz' corporation never intended to expand to the southern end of Puerto Rico; and that, in any event, Diaz was either not the first user of the trade name or, alternatively, had acquiesced in Maldonado's use of the name.

According to the plaintiff's brief on appeal, the case turned on two issues: (1) Did the defendant's use of the trade name infringe plaintiff's preexisting use by intruding into the path of the plaintiff's natural business expansion? (2) Did the defendant's conduct of its business and its concomitant advertising constitute "palming off" or some other proscribed type of unfair competition? The district court, with the full acquiescence of the plaintiff, melded these issues into one, treated their critical components as questions of fact, and left them to the jury. We attach as an appendix the meat of the district court's charge—a charge to which the plaintiff did not object. After returning on one occasion for supplemental instructions (to which no objection was interposed), the jury found for the defendant. This appeal followed.

## II

The plaintiff's appellate counsel rails against the verdict, complaining that the defendant's use of the disputed trade name constituted "a clear example of palming off" and trespassed into plaintiff's natural zone of commercial expansion.[2] One problem with these asseverations is that the plaintiff was apparently content to leave them to the jury as matters of fact. The plaintiff did not object to the charge. Hence, the district court's instructions be-

---

**1.** A "muebleria" is a furniture store. "La Amiga del Pueblo" roughly translates as "The People's Friend."

**2.** We discussed the scope of the "natural expansion" doctrine, and its limitations, at considera-

ble length in *Raxton Corp. v. Anania Assoc., Inc.,* 635 F.2d 924, 927–31 (1st Cir.1980). Given the spavined posture of this appeal, it would serve no useful purpose to restate the doctrine here.

came the law of the case. *See Milone v. Moceri Family, Inc.*, 847 F.2d 35, 38–39 (1st Cir.1988); *Murphy v. Dyer*, 409 F.2d 747, 748 (10th Cir.1969). The evidence was conflicting: depending on which witnesses were believed, and what inferences were drawn, a reasonable jury could have found, in the words of the charge, that the parties did (or did not) serve "distinct and geographically separated" markets. A reasonable jury could likewise have found, again in the words of the charge, that the defendant's use of the name was (or was not) "likely to cause confusion as to the source of the goods." What is more, the plaintiff, beforehand, did not move for a directed verdict. Following the verdict, it did not move for either a new trial or judgment n.o.v.

Under the circumstances, we are at a loss to see how the appellant could conceivably be entitled to any relief. If the appellant contends that it deserved a verdict as a matter of law, then it waived the entitlement by its failure to move for a directed verdict under Fed.R.Civ.P. 50(a). *See, e.g., Jusino v. Zayas*, 875 F.2d 986, 991 (1st Cir.1989) ("Fed.R.Civ.P. 50 makes a timely directed verdict motion a prerequisite for later consideration of the legal sufficiency of the evidence") (footnote omitted); *LaForest v. Autoridad de las Fuentes Fluviales de Puerto Rico*, 536 F.2d 443, 445 (1st Cir.1976) ("a federal appellate court may not reverse for insufficiency of the evidence in the absence of an unwaived motion for directed verdict"); *Thomas v. Akin Equip., Inc.*, 309 F.2d 331 (5th Cir.1962) (per curiam) (a litigant who has not made a timely motion for a directed verdict is bound by a jury verdict based on conflicting evidence). If, on the other hand, the appellant contends that it deserved a verdict as a matter of fact, then it waived the entitlement by its failure to move for a new trial under Fed.R.Civ.P. 59(a). It is, after all, well settled that, if a

verdict-loser has made neither a timely motion for a new trial nor a timely motion for an instructed verdict, the court of appeals will not thereafter review the weight of the evidence undergirding the adverse verdict. *See, e.g., Jusino*, 875 F.2d at 991–92; *Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir. 1977); *Braunstein v. Massachusetts Bank & Trust Co.*, 443 F.2d 1281, 1285 (1st Cir. 1971); *cf. Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (issues not seasonably raised in the district court cannot be argued on appeal).

There is, of course, some authority that, even where no such motions have been interposed, an appellate court may nonetheless, in the interests of justice, review the record to ascertain whether there was an absolute absence of evidentiary support for the jury's verdict. *See, e.g., Hoover, Inc. v. McCullough Indus., Inc.*, 380 F.2d 798, 801 (5th Cir.1967). Assuming that we were inclined to grant the benefit of that generous formulation, the correctness of which we leave for another day, the plaintiff would not be assisted. The evidence in this case was not all one way but was susceptible to widely divergent interpretations. It is fundamental to our system of jurisprudence that, when the evidence as a whole can plausibly support more than one view of a situation, "[j]urors, using common sense and collective experience assess credibility and probability, and proceed to make evaluative judgments, case by case . . . ." *Levesque v. Anchor Motor Freight, Inc.*, 832 F.2d 702, 704 (1st Cir. 1987). Nothing more startling transpired here. The jury verdict must stand.

### III

The appellant's last remaining reason of appeal asks that we find an example which the judge gave the jury in his supplemental instructions to have been confusing, hence, improper.[3] We need not linger over this assignment of error. The short of the

---

**3.** The example was along the following lines: Let's assume that I put a Kiosko in Rio Piedras and I sell pencils and whatever, all things for that and then I put a name. I put the name Cupey Kiosko, selling to the ... people [in the] area. Somebody else in Car-

olina puts a Cupey Kiosko there. He caters to other people. Well, there is no competition. This was one of a series of three illustrations used by the lower court in its supplemental charge.

matter is that the appellant did not object to the use of the example in the court below. It follows inexorably that the appellant waived the right to press an objection on appeal. *See* Fed.R.Civ.P. 51 ("No party may assign as error the giving [of] or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); *see also Toscano v. Chandris, S.A.*, 934 F.2d 383, 385 (1st Cir.1991) (failure to raise an objection to the charge when and as required by Civil Rule 51 works a waiver of the objection); *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 809 (1st Cir.) (same), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988).

To be sure, the appellant seeks to avoid the preclusive force of Rule 51 by arguing that the error was "fundamental." But simply labelling an error as fundamental does not make it so. We have recently pointed out that "[t]he plain error standard, high in any event, is near its zenith in the Rule 51 milieu." *Toscano*, 934 F.2d at 385 (internal citations omitted). In this instance, the court's illustration, if erroneous at all—a matter which we need not reach—surely did not "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2558, at 675 (1971). Thus, plain error was plainly absent. *See, e.g., Toscano*, 934 F.2d at 385; *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 568 (1st Cir.1989); *Smith v. Massachusetts Inst. of Technology*, 877 F.2d 1106, 1110 (1st Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989); *Wells*, 850 F.2d at 809; *Almonte v. National Union Fire Ins. Co.*, 787 F.2d 763, 769 (1st Cir.1986); *Morris v. Travisono*, 528 F.2d 856, 859 (1st Cir.1976).

## IV

■ The defendant has asked that we award double costs and counsel fees. "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and … double costs to the appellee."

Fed.R.App.P. 38. Rule 38 is aimed at "discourag[ing] litigants from wasting the time and resources of both their opponents and the judicial system with arguments that are without merit." *Transnational Corp. v. Rodio & Ursillo, Ltd.*, 920 F.2d 1066, 1072 (1st Cir.1990). We believe this to be a paradigm case for the rule's application.

"An appeal is frivolous within the purview of Fed.R.App.P. 38 when the appellant's legal position is doomed to failure—and an objectively reasonable litigant should have realized as much from the outset." *Toscano*, 934 F.2d at 387; *see also Transnational*, 920 F.2d at 1072; *E.H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1280 (1st Cir.1990). In this case, given the conflicting evidence and the lack of preserved objections, it should have been absolutely clear once the jury spoke that the plaintiff's prospects on appeal, short of a fluke, were nonexistent. We do not think that any responsible litigant or lawyer should have gone forward with an appeal in these straitened circumstances.

We need go no further. Because the plaintiff had no legitimate basis for pursuing the appeal, and its appellate counsel should have known as much, we direct that La Amiga del Pueblo, Inc. and the attorney pay the sum of $2500 toward Robles' counsel fees, along with double costs. *See, e.g., N.E. Alpine Ski Shops, Inc. v. U.S. Divers Co.*, 898 F.2d 287, 291 n. 1 (1st Cir.1990) ("From aught that our analysis has revealed to us, [appellant] compelled [appellee] to attend our venue, hoping for nothing less than a miracle.") (imposing attorneys' fees and double costs under Rule 38); *see also* 28 U.S.C. § 1927 (addressing counsel's liability). As we wrote on an earlier, comparable occasion: "Hope may, as the aphorist would have it, spring eternal; but appeals founded on hope alone, unanchored in law or fact, should not be prosecuted." *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 818 (1st Cir.1987).

*The judgment below is affirmed. The appellee's request for appellate sanctions is granted and the appellee is awarded double costs and counsel fees of $2500.*

## APPENDIX

### Excerpts From District Court's Jury Charge

Now, to find liability for unfair competition, you, the jury, must find from a preponderance of the evidence the following:

. . . .

Number one. That the public recognizes the plaintiff's, or plaintiff's predecessor, use of La Amiga del Pueblo in connection with the sale and/or advertising for sale of furniture and electric appliances as identifying its goods and distinguishing them from those of others.

Second element. That such recognition has occurred before the defendant, or defendant's predecessors, entered the market in which the plaintiff provides its goods and services.

And third. That the defendant uses La Amiga del Pueblo in a manner likely to cause confusion as to the source of the goods among persons using ordinary care and prudence in the purchase of furniture and electric appliances.

. . . .

If you find by a preponderance of the evidence that plaintiff has proved these elements, then, and only then, you may find the defendant liable for unfair competition.

. . . .

Now, if you find that the plaintiff established the use of the name La Amiga del Pueblo as a trade name for his furniture and electric appliance sales and services before the defendant, or defendant's predecessor did, then you must consider whether the defendant used the trade name La Amiga del Pueblo in a manner likely to cause confusion as to the source of sale of the furniture and electric appliances among consumers using ordinary care and prudence in the purchase of furniture and electric appliance[s].

. . . .

The fact that the origin of the furniture and electric appliance[s] could be distinguished by careful or discriminating purchasers is not enough to lead you to conclude that there is no liability of confusion.

In determining whether there is or will be a likelihood of confusion caused by the use of name La Amiga del Pueblo by both plaintiff and defendant in connection with furniture and electric appliance sales, you may draw on your common experience, as citizens of the community.

You also may consider the following factors:

The degree of similarity of the names— [t]hey are identical . . . the similarity of the goods, the relationship between the parties' channel of trade, the relationship between the parties' advertising and/or the extent of their sales efforts, the price of goods, the classes of prospective purchasers or consumers, and other factors indicative of the degree of care and attention likely to be used by consumers when making a purchase.

. . . .

You also may consider evidence, if any, of actual confusion. You also may consider the intent of the defendant in adopting the name La Amiga del Pueblo. You also may consider the strength of the name La Amiga del Pueblo. You also may consider the length of time the defendant has used the name La Amiga del Pueblo without evidence of actual confusion. You may also consider the manner and method in which the plaintiff and defendant used the name La Amiga del Pueblo. Other factors about the La Amiga del Pueblo which would tend to reduce any tendency to confuse the purchaser as to the source or origin of the furniture and electric appliance sales. Also, you may consider whether defendant is actually operating in [an] area served by plaintiff, which is distinct and geographically separated from the plaintiff.

Now, no one factor or consideration is conclusive, but each aspect should be weighed in light of the total evidence presented at trial.

. . . .

[T]here is no unfair competition if you find that the parties served customers from the distinct and geographically-separated market areas.

In other words, if the parties are not competing with each other, there is no unfair competition.