Sandra **ROLON–ALVARADO,**
Plaintiff, Appellant,

v.

**MUNICIPALITY OF SAN JUAN,**
Defendant, Appellee.

No. 92–2298.

United States Court of Appeals,
First Circuit.

Submitted June 9, 1993.

Decided Aug. 9, 1993.

Pedro J. Varela and Jose E. Colon, on brief, for plaintiff, appellant.

Thomas Doran Gelabert and Eli B. Arroyo, on brief, for defendant, appellee.

Before SELYA, CYR and STAHL, Circuit Judges.

SELYA, Circuit Judge.

This appeal necessitates that we consider the quantum and character of proof needed under Puerto Rico law in a medical malpractice case. The lower court found plaintiff's evidence to be apterous and grounded her suit before it reached the jury. We affirm.

**I**

Plaintiff-appellant Sandra Rolon–Alvarado is a citizen and resident of New York. She is also a surviving daughter of Efrain Rolon–Robles, who died while undergoing treatment at a hospital operated by defendant-appellee (a municipality).

The facts leading up to Rolon–Robles's demise are largely uncontradicted. Rolon–Robles began experiencing abdominal pain on May 4, 1990. The next day, he was admitted to San Juan Municipal Hospital for treatment of an intestinal obstruction. While being rehydrated in preparation for surgery on May 6, Rolon–Robles remarked that the abdominal pain had abated. The attending physicians took this as an indication that he probably had a paralytic ileus rather than an intestinal obstruction. Consequently, they postponed the scheduled surgery.

As the hours went by, the patient's condition deteriorated. The doctors reversed their field, reinstated the original diagnosis, and operated on May 7. Rolon–Robles remained in stable condition until later that day, when an endotracheal tube, reinserted in the immediate aftermath of the surgery, snapped. While a physician attempted to replace the broken tube, Rolon–Robles went into cardiorespiratory arrest. Shortly thereafter, he expired.

The parties draw vastly different inferences from this set of facts. One series of inferences prompted plaintiff to bring the instant action in Puerto Rico's federal district court. Invoking diversity jurisdiction, *see* 28 U.S.C. § 1332(a) (1988), she alleged that her father died due to the careless and negligent treatment he received at the hospital. Defendant, preferring a far more flattering series of inferences, denied the allegations.

In the course of discovery, plaintiff refined her charges into four basic claims. Three sounded in ordinary negligence: that defendant's agents (the hospital and the staff), heedless of their obligation to exercise due care, (1) delayed surgery, (2) misdiagnosed her father's condition, and (3) left him unattended during critical stages of the postoperative period. The fourth claim posited that the defendant should be held strictly liable for the ruptured endotracheal tube. At trial, plaintiff attempted to prove her claims. When she rested, the district court granted defendant's motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50(a)(1). This appeal followed.

**II**

We restate, in capsule form, the principles that govern judicial consideration of motions under Rule 50(a).

A trial court, confronted with a motion for judgment as a matter of law, whether at the end of the plaintiff's case or at the close of all the evidence, must scrutinize the proof and the inferences reasonably to be drawn therefrom in the light most hospitable to the nonmovant. *See Lowe v. Scott*, 959 F.2d 323, 337 (1st Cir.1992); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 634 (1st

.. 

Cir.1990); *Wagenmann v. Adams,* 829 F.2d 196, 200 (1st Cir.1987). In conducting that perscrutation, the court must refrain from differential factfinding; that is to say, the court must "not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Wagenmann,* 829 F.2d at 200. A verdict may be directed only if the evidence, viewed from this perspective, is such that reasonable minds could not differ as to the outcome. *See Veranda Beach Club Ltd. Partnership v. Western Sur. Co.,* 936 F.2d 1364, 1383 (1st Cir.1991); *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 199 (1st Cir.1980).

■ When, as now, a disappointed suitor seeks to set aside a directed verdict, the court of appeals is constrained in precisely the same fashion as the district court. For this reason, and because the key question revolves around the legal sufficiency of the evidence, appellate review is plenary. *See Salve Regina Coll. v. Russell,* 499 U.S. 225, 231–32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Jordan–Milton Mach., Inc. v. F/V Teresa Marie, II,* 978 F.2d 32, 34 (1st Cir. 1992).

### III

■ The substantive law of Puerto Rico controls in this diversity suit.[1] To establish a *prima facie* case of medical malpractice under that law, a plaintiff must adduce evidence showing at least three separate things: (1) the duty owed, expressed as the minimum standard of professional knowledge and skill required under the circumstances then obtaining; (2) a breach of that duty attributable to the defendant; and (3) a sufficient causal nexus between the breach and the plaintiff's

claimed injury.[2] *See Sierra Pérez v. United States,* 779 F.Supp. 637, 643 (D.P.R.1991); *Crespo v. Hernandez,* 121 P.R.Dec. 639, 650 (1988); *Medina Santiago v. Velez,* 120 P.R.Dec. 380, 385 (1988). The district court concluded that Rolon–Alvarado's proof, viewed in the light most favorable to her, did not suffice to establish any of these three elements. We agree with the court below that plaintiff did not prove a *prima facie* case.

### A

■ We begin—and end—our consideration of plaintiff's first three claims by focusing on her abortive attempt to delineate the duty owed. In 1973, Puerto Rico jettisoned the so-called "locality" or "community standard" rule in favor of a more universal, less parochial approach to establishing the standard of acceptable care for purposes of a medical malpractice suit. *See Valendon Martinez v. Hospital Presbiteriano,* 806 F.2d 1128, 1135–36 (1st Cir.1986) (discussing effect of *Oliveros v. Abreu,* 101 P.R.Dec. 209 (1973)). Today, a physician is expected to possess, and use, that level of knowledge and skill prevalent in his or her specialty *generally,* not simply the knowledge and skill commonly displayed in the community or immediate geographic region where the treatment is administered. *See Oliveros,* 101 P.R.Dec. at 223, 226–27, *translated in* 1 P.R.Sup.Ct. Off'l Translations 293, at 303, 313. In other words, a health-care provider has a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances,

---

1. First Circuit Local Rule 30.7 provides in pertinent part that, "[w]henever an opinion of the Supreme Court of Puerto Rico is cited in a brief ... [and] does not appear in the bound volumes in English, an official, certified or stipulated translation thereof with three conformed copies shall be filed." In this instance, the parties have cited several such cases without supplying translations. Although we have coped by using informal translations of the opinions in question, we remind litigants of their obligations under Local Rule 30.7 and forewarn the bar that, in the future, we will insist upon strict observance of the rule.

2. The elements of this cause of action under Puerto Rico law are comparable to the elements of a cause of action for medical malpractice elsewhere. *See, e.g., Mills v. Levy,* 537 F.2d 1331, 1332 (5th Cir.1976) (applying Louisiana law); *MacDonald v. United States,* 767 F.Supp. 1295, 1307 (M.D.Pa.1991) (applying Pennsylvania law); *MacGuineas v. United States,* 738 F.Supp. 566, 569 (D.D.C.1990) (applying Maryland law); *Powers v. United States,* 589 F.Supp. 1084, 1099 (D.Conn.1984) (applying Connecticut law).

regardless of regional variations in professional acumen or level of care.

■ Under the law of Puerto Rico, "there exists always a presumption that the treating physicians have observed a reasonable degree of care ... in the process of giving medical attention and treatment." *Del Valle Rivera v. United States,* 630 F.Supp. 750, 756 (D.P.R.1986). Plaintiff bears the burden of refuting this presumption. *See id.* To do so, she must first establish the physician's duty. Because medical knowledge and training are critical to demonstrating the parameters of a health-care provider's duty, the minimum standard of acceptable care is almost always a matter of informed opinion. Thus, it must ordinarily be established by expert testimony. *See Oliveros,* 1 P.R.Sup.Ct.Off'l Translations at 315; *see also Bellecourt v. United States,* 994 F.2d 427, 431–32 (8th Cir.1993) (applying Minnesota law) [1993 U.S.App. LEXIS 11,088, at *11]; *Dunning v. Kerzner,* 910 F.2d 1009, 1014 (1st Cir.1990) (applying Rhode Island law); *Crowley v. United States,* 773 F.Supp. 98, 102 (N.D.Ill.1991). No such testimony graces this record.

■ To be sure, plaintiff presented an expert witness, Dr. Piza.[3] But, Dr. Piza did not testify anent duties or standards of care. Rather, he testified as to what he would have done differently in managing the decedent's case. Medicine, however, is not an exact science. It is, therefore, insufficient for a plaintiff in a malpractice case merely to show that another doctor would have chosen to treat the patient in a manner different from the manner in which the attending physicians treated him. *See, e.g., Campbell v. United States,* 904 F.2d 1188, 1192 (7th Cir.1990); *Polikoff v. United States,* 776 F.Supp. 1417, 1421 (S.D.Cal.1991); *East v. United States,* 745 F.Supp. 1142, 1149 (D.Md.1990); *Walski v. Tiesengas,* 72 Ill.2d 249, 21 Ill.Dec. 201, 207, 381 N.E.2d 279, 285 (1978).

We have no doubt that Puerto Rico would follow this rule; indeed, in what amounts to a variation on the same theme, the Puerto Rico Supreme Court has held that even an acknowledged error in medical judgment cannot support a malpractice claim so long as the mistake is reasonable. *See Oliveros,* 1 P.R.Sup.Ct.Off'l Translations at 314; *see also Suarez Matos v. Ashford Presbyterian Community Hosp.,* 4 F.3d 47, 50 (1st Cir.1993) (suggesting that, in Puerto Rico, a mistake in diagnosis will not necessarily constitute malpractice); *Del Valle Rivera,* 630 F.Supp. at 756 (stating that, under Puerto Rico's jurisprudence, a plaintiff who charges a physician with malpractice must establish that the defendant's fault "is more than a mere hindsight possibility"). In sum, tort law neither holds a doctor to a standard of perfection nor makes him an insurer of his patient's wellbeing. Professional standards require normative judgments, not merely proof that a better way to treat a particular patient could have been devised.

Against this backdrop, plaintiff's first three statements of claim cannot survive scrutiny. As to the one-day delay in operating, Dr. Piza made it clear that he would have put Rolon–Robles under the knife on May 6 rather than waiting until May 7—but he offered no enlightenment on the subject of the prevailing standard by which decisions on the timing of such operations might be held to fall outside the range of reasonable judgments. By like token, while Dr. Piza testified that he disagreed with the mid-stream change in diagnosis, and the way in which the hospital monitored the patient postoperatively, he failed to advance any basis on which applicable standards could be fixed or, conversely, against which defendant's conduct could be measured. The mere fact that Dr. Piza might have selected a particular approach or method of treatment does not, without more, establish that a different approach or method, even if unsuccessful, fell short of the duty owed. Nor did the witness's references to generalities contained in a learned treatise bridge the gap.

---

**3.** Another physician, Dr. Mercado, also testified in plaintiff's behalf. However, Dr. Mercado did not qualify as an expert in surgery and the district court limited his testimony accordingly. On appeal, plaintiff does not assign error to this ruling. Nothing in Dr. Mercado's remaining testimony adds materially to Dr. Piza's comments or otherwise assists in filling the standard-of-care void.

The short of it is that, as the district court found, the evidentiary predicate in regard to standards of care is wholly inadequate; and without such a predicate, the jury had no legally satisfactory basis for making a reasoned determination as to whether defendant's employees were negligent in caring for Rolon–Robles. Consequently, plaintiff could not carry her burden of proof.

Of course, the law recognizes a narrowly configured exception to the general rule requiring expert testimony in medical malpractice cases.[4] Although courts have formulated the exception in divers ways—it has been variously described as implicating situations where common knowledge and experience are all that is necessary to comprehend a defendant's negligence, *see, e.g., Nixdorf v. Hicken,* 612 P.2d 348, 352 (Utah 1980) (applying exception to loss of surgical instrument within an incision), or where negligence is grossly apparent, *see, e.g., Thomas v. Corso,* 265 Md. 84, 288 A.2d 379, 388 (1972) (applying exception to physician's outright failure to attend a patient), or where a doctor's conduct violates a set standard, *see, e.g., Monk v. Doctors Hosp.,* 403 F.2d 580, 583 (D.C.Cir.1968) (applying exception to provider's contravention of manufacturer's instruction manual for operation of electrosurgical machine)—we think that the exception encompasses only those few situations in which the claimed medical malpractice is sufficiently blatant or patent that lay persons, relying on common knowledge and experience, can legitimately recognize or infer negligence. *Cf. Wagenmann,* 829 F.2d at 218–20 (discussing circumstances under which expert testimony may properly be foregone in cases of claimed legal malpractice).

However it may be fine-tuned, the exception does not sweep so broadly as to avail the present plaintiff. The questions plaintiff has raised anent decedent's care involve matters of timing, differential diagnosis, and hospital protocol—matters which are neither obvious to the untrained eye nor, by any stretch, within a layman's ken. Where, as here, medical personnel make on-the-spot decisions, requiring sophisticated medical insights, a jury cannot be expected to evaluate those judgment calls without the aid of expert opinion. And, because expert testimony is necessary to demonstrate the claimed negligence of defendant's agents under the circumstances at hand, this case does not fit within the isthmian confines of the exception.

We conclude, therefore, given the paucity of the proof, especially the absence of expert testimony concerning applicable standards of acceptable care, that the district court properly directed a verdict on plaintiff's first three claims.

**B**

We have left for last plaintiff's contention that liability can be premised on the splintered endotracheal tube. On this issue, independent proof of a standard of care might not be required if, as plaintiff says, the doctrine of *res ipsa loquitur* pertains.[5] Nonetheless, we think that plaintiff's reliance on the doctrine is mislaid.

For the doctrine of *res ipsa loquitur* to apply, a plaintiff must establish that an occurrence is "(1) ... of a kind which does not ordinarily take place unless someone is negligent; (2) caused by an agency or instrumentality within the defendant's exclusive control; and (3) not due to any voluntary action on the part of the plaintiff." *De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 123 (1st Cir.1991) (applying Puerto Rico law); *accord Colmenares Vivas v. Sun Alliance Ins. Co.,* 807 F.2d 1102, 1104 (1st Cir. 1986). Here, plaintiff's own expert, Dr. Piza, testified categorically that the breaking of the tube "could not be foreseen"; that me-

---

**4.** Although plaintiff has cited no Puerto Rico cases endorsing this exception, we assume for present purposes, albeit without deciding, that the Puerto Rico Supreme Court would follow the majority view and adopt the exception.

**5.** Plaintiff initially pleaded strict liability, but abandoned this approach at trial in favor of a *res ipsa loquitur* theory. In any event, it is hornbook law that a health-care provider cannot be held strictly liable for a latent defect in a medical device manufactured by a third party. *See, e.g., Hoff v. Zimmer, Inc.,* 746 F.Supp. 872, 874 (W.D.Wis.1990); *NME Hosp. v. Azzariti,* 573 So.2d 173, 173 (Fla.1991) (per curiam); *Silverhart v. Mt. Zion Hosp.,* 20 Cal.App.3d 1022, 1028, 98 Cal.Rptr. 187 (1971).

chanical mishaps of this sort frequently happen in the absence of provider negligence; that, in general, "there is no possible malpractice in the rupture of a mechanical device"; and that, in this specific situation, the attending physicians and nurses were blameless. Thus, *res ipsa loquitur* has no bearing on the case. It follows that plaintiff's fourth statement of claim is meritless.

## IV

We need go no further.[6] On this impoverished record, the district court correctly withheld the case from the jury and directed a verdict in favor of the defendant.

*Affirmed.* *See* 1st Cir.Loc.R. 27.1.

---

**6.** Since plaintiff failed to prove the minimum standard of care owed by defendant to her decedent, we need not dwell on the other deficiencies that the district court attributed to her case. It suffices to say that, absent proof of the legal duty owed by a defendant to a plaintiff in a medical malpractice suit, it is virtually impossible to prove either breach or proximate cause; breach, after all, depends directly on the contours of the duty owed, and proximate cause, in turn, depends on the nature and effect of the breach.