# United States Court of Appeals
## For the First Circuit

No. 03-2095

HECTOR MUÑIZ ET AL.,

Plaintiffs, Appellees,

v.

DR. SALVADOR ROVIRA, A/K/A
DR. SALVADOR ROVIRA-MARTINO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

Gladys E. Guemarez for appellant.
David Efron, with whom Law Offices of David Efron was on
brief, for appellees.

June 7, 2004

**SELYA**, **Circuit Judge**.  This is a diversity action, 28 U.S.C. § 1332(a), in which the real party in interest — plaintiff-appellee Moises Muñiz Crespo — sued Dr. Salvador Rovira-Martino (Dr. Rovira) for medical malpractice.[1]  The case was tried to a jury from May 7 through May 15, 2003, culminating in a verdict for $2,000,000 in compensatory damages.  After reducing the award to take into account sums paid by other defendants, see supra note 1, the court entered judgment for the plaintiff in the amount of $1,790,000.  This appeal ensued.

Winning battles often involves choosing one's battleground.  That maxim applies with particular force in adversarial litigation.  We have made it transparently clear that the raise-or-waive rule can neither be ignored nor brushed aside as "a pettifogging technicality or a trap for the indolent."  Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995).  Rather, it is a prudential rule "founded upon important considerations of fairness, judicial economy, and practical wisdom."  Id.  Thus, if a party forgoes objections in the district court, it becomes exponentially more difficult for him to mount those objections on appeal.  See, e.g., United States v. Bongiorno,

---

[1]Moises is a minor who sued by and through his parents, Hector Muñiz and Sonia Crespo.  Although the parents are thus parties, they have filed no claims to their own behoof.  By the same token, the complaint originally named other defendants, but all of them settled prior to trial.  Consequently, we treat this appeal as if Moises were the sole plaintiff and Dr. Rovira the sole defendant.

106 F.3d 1027, 1034 (1st Cir. 1997) (admonishing that "matters not squarely presented below generally cannot be advanced on appeal"); Teamsters Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) (describing as "settled" the principle that, with only a narrow band of exceptions, "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal"); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987) (noting that "we have regularly declined to consider points which were not seasonably advanced below").

The case at hand presents a textbook example of the rule in operation. It simultaneously illustrates just how rigorous a gauntlet an appellant must run if he has failed to raise below the points that he hopes will carry the day in the court of appeals.

## I

Briefly stated, the evidence at trial, taken, as required, in the light most favorable to the verdict, showed that the plaintiff's mother had come under the care of Dr. Rovira (an obstetrician); that she was a diabetic — and that the doctor knew as much; and that this condition, together with her age and other factors, made her a high-risk patient. The jury heard testimony from which it could have found that, despite these looming risks, Dr. Rovira failed adequately to monitor either the mother or the fetus during the latter stages of the pregnancy (e.g., he did not regularly record or control the mother's blood sugar levels, he

-3-

eschewed oxytocin challenge tests, and he neglected to order serial ultrasound examinations). When the baby (Moises) was born, he was quite large — nearly twelve pounds. The jury could have found that Dr. Rovira did not properly manage the birthing process (e.g., he attempted a vaginal delivery despite the baby's size and, even then, he did not use a series of specific maneuvers that would have minimized the risk of injuring the infant). In all events, the plaintiff was born with a brachial plexus injury, Erb's palsy, and a shoulder dystocia. There was competent medical evidence that these conditions were likely to be both permanent and painful.

## II

On appeal, the defendant advances four assignments of error. In the present procedural posture of the case, none has the slightest merit.

## A

As an opening salvo, the defendant attempts to challenge the sufficiency of the evidence. In the best of circumstances, insufficiency challenges confront a daunting standard of review. An inquiring court must construe all the evidence in the light most hospitable to the verdict. Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 76 (1st Cir. 1993). In so doing, the court may not judge the veracity of witnesses, resolve testimonial conflicts, or assay the weight of the evidence. Gibson v. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994). The evidence will be deemed

insufficient only if the record, viewed from this verdict-friendly perspective and without regard to credibility or weight, is such that reasonable minds could not differ as to the outcome. Rolon-Alvarado, 1 F.3d at 77.

In this case, Dr. Rovira faces an even more demanding standard. He neglected to file a motion for judgment as a matter of law in the district court when both sides had rested.[2] By like token, he abjured the filing of a motion for a new trial subsequent to the verdict. Given these defaults, he has forfeited his right to test the sufficiency of the evidence in the usual way. See Hammond v. T. J. Litle & Co., 82 F.3d 1166, 1171-72 (1st Cir. 1996); La Amiga del Pueblo, Inc. v. Robles, 937 F.2d 689, 691 (1st Cir. 1991); Jusino v. Zayas, 875 F.2d 986, 991-92 (1st Cir. 1989). This lapse leaves open only the narrowest avenue of possible relief. Absent a timely motion either for judgment as a matter of law or for a new trial, the court of appeals can pay heed to an insufficiency challenge only if it finds that the verdict, if allowed to stand, will work a clear and gross injustice. Hammond, 82 F.3d at 1172.

There is no hint of a clear and gross injustice here. To prevail in his medical malpractice action under Puerto Rico law,

---

[2]Failure to file a motion for judgment as a matter of law at the close of all the evidence pretermits the filing of a post-trial motion for that relief. See Fed. R. Civ. P. 50(b); see also Freeman v. Package Mach. Co., 865 F.2d 1331, 1343 (1st Cir. 1988). In all events, the defendant filed no such post-trial motion.

-5-

the plaintiff was required to show (i) that the defendant failed to follow basic precepts of knowledge and medical care applicable to a practitioner in his speciality, and (ii) that his acts or omissions caused the plaintiff's injuries. Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994); Rolon-Alvarado, 1 F.3d at 77. Taken at face value, the expert testimony offered by the plaintiff fully satisfied these requirements.

One expert, Dr. Nathanson, stated unequivocally that the defendant deviated from the applicable standard of care by neglecting to perform the type of prenatal monitoring that is customary for high-risk patients. The same witness opined that the defendant failed adequately to manage the plaintiff's shoulder dystocia during labor and, thus, caused the nerve damage that led to his brachial plexus injury and Erb's palsy. Another expert, Dr. Hausknecht, offered opinion evidence sufficient to meet the causation prong and, in addition, testified that the harm inflicted by the defendant's lack of due care will affect the plaintiff for the remainder of his life. Although the defense presented contradictory expert testimony, that does nothing to vitiate the sufficiency of the plaintiff's proof. Cf. United States v. Alicea, 205 F.3d 480, 483 (1st Cir. 2000) (reaffirming, in connection with an insufficiency challenge, that "credibility determinations are for the jury, not for an appellate court").

-6-

When the record as a whole plausibly supports more than one answer to a question of fact, the evidence is said to be sufficient no matter which way the jury decides.  See, e.g., La Amiga, 937 F.2d at 691.  That principle controls here.  The defendant's challenge to the sufficiency of the evidence is, therefore, a lost cause.

**B**

The defendant asserts, in retrospect, that the plaintiff's counsel engaged in misconduct by making inflammatory comments during both his opening statement and his closing argument.  We say "in retrospect" because, when the comments were made, the defendant interposed no contemporaneous objection to any of them.  Hence, our review is only for plain error.  Doty v. Sewall, 908 F.2d 1053, 1056-57 (1st Cir. 1990); United States v. Mejia-Lozano, 829 F.2d 268, 272 (1st Cir. 1987).

The plain error hurdle is high.  "Review for plain error entails four showings:  (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  The defendant cannot conceivably vault that hurdle here.

We need not dwell on the allegedly improper statements.  They consist, for the most part, of references to the plaintiff as

a "little boy," descriptions of the extent of his injuries, allusions to the importance of the case, and so on and so forth.[3] It suffices to say that we have conducted a painstaking review of the transcript. That review makes it abundantly clear that the plaintiff's counsel gave no quarter. He took full advantage of the sympathetic nature of his case and, on occasion, he sailed close to the wind. We find no indication, however, that counsel crossed the thin line that separates vigorous advocacy from impermissible appeals to passion or prejudice. See supra note 3. By like token, we find no indication that improper rhetoric influenced the outcome of the trial. There is a critical difference between a lawyer who hits hard and a lawyer who hits below the belt. Cf. Berger v. United States, 295 U.S. 78, 88 (1935) ("[W]hile [an attorney] may strike hard blows, he is not at liberty to strike foul ones."). The plaintiff's opening statement and closing argument in this case both were hard-hitting, but neither was manifestly improper.

To say more on this point would be supererogatory. We conclude, without serious question, that the defendant has not demonstrated plain error with respect to either the plaintiff's

---

[3]The defendant enumerates seventeen separate instances of allegedly impermissible comments in the plaintiff's opening statement and eight additional instances in the plaintiff's summation. The vast majority of these are well within the bounds of permissible advocacy. A few might be regarded as borderline, but any marginal impropriety is not so egregious that the trial court's failure to strike them sua sponte could be deemed plain error.

opening statement or the plaintiff's summation.  See United States

v. Taylor, 54 F.3d 967, 977 (1st Cir. 1995) (explaining that

reversal is not justified unless "the illegitimate portion of the

closing argument 'so poisoned the well that the trial's outcome was

likely affected'" (quoting Mejia-Lozano, 829 F.2d at 274)).

## C

The defendant next argues that the district court erred

in failing to give a stronger instruction concerning the jury's

obligation to render a verdict solely on the basis of the evidence

and uncontaminated by undue passion, prejudice, or sympathy.  But

the specter of procedural default again looms large:  the defendant

did not request such an instruction at the charge conference, nor

did he object to the charge as given.  Under these circumstances,

he is at a huge (if self-induced) disadvantage in this venue.  See

Fed. R. Civ. P. 51; see also Moore v. Murphy, 47 F.3d 8, 11 (1st

Cir. 1995) (holding that a "failure to object to [jury]

instructions at the time, and in the manner, designated by Rule 51

is treated as a procedural default").  Silence after instructions

ordinarily constitutes a forfeiture of any objections, Putnam Res.

v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992) — and this case is

within the mine-run.

To be sure, even absent proper compliance with Rule 51,

we can review jury instructions for plain error.  See, e.g.,

Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2002) (en

banc) (per curiam); <u>Wells Real Estate, Inc.</u> v. <u>Greater Lowell Bd. of Realtors</u>, 850 F.2d 803, 809-10 (1st Cir. 1988). In this context, however, the plain error doctrine requires the appellant to show, at a bare minimum, that the alleged error seriously affected the fairness or integrity of the trial. <u>See</u> <u>Toscano</u> v. <u>Chandris, S.A.</u>, 934 F.2d 383, 385 (1st Cir. 1991). The defendant has made no such showing here.

The district court's charge was fair and balanced. While it did not contain the exact terminology that the defendant now says he would have preferred, the court did tell the jury that "[a]ll cases and all parties must be measured only under the rule of law, without reference to anything else." This instruction followed hot on the heels of an instruction in which the court noted that "[i]n the business of judging, there is no place for such feelings," which, in context, was a reference back to the court's cautionary language about the role of "sympathy, prejudice, passion or public opinion."

We discern no plain error. The trial court's locution, though perhaps a trifle awkward, made the same point as the phrasing that the defendant belatedly endorses. Given the standard of review, that nuanced difference is of no moment.

There are few, if any, magic words in jury instructions ("beyond a reasonable doubt" may be an exception, but it is hard to think of others). In the main, a party does not possess a right to

insist that the trial court instruct the jury in the particular phraseology that he desires.  See, e.g., United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995); Putnam Res., 958 F.2d at 462.  It stands to reason, then, that a party has no right to criticize the court for using one roughly equivalent formulation rather than another when the party has not, by a timely request and/or objection, made its preference known.  Trial judges are not expected to be mind readers.  United States v. Barnes, 251 F.3d 251, 257 (1st Cir. 2001).  The defendant's unpreserved challenge to the jury instructions must, therefore, fail.

**D**

This leaves the defendant's last, and most loudly bruited, asseveration:  that the jury's award of damages was grossly excessive.  This asseveration has two facets.

First, the defendant contends that the parents neglected to ensure that Moises received prompt neurologic attention and physical therapy, and, thus, that the award is too munificent because Moises failed to mitigate damages.  The district court, responding to this contention, charged the jury as follows:

> Mitigation is a concept requiring the victim of a damage [sic] to take reasonable steps to reduce the damages suffered . . . . Mitigation is, therefore, a concept to be considered in calculating damages if deemed applicable to the facts of this case.

-11-

The defendant did not object to this instruction and it is, therefore, the law of the case.[4] Milone v. Moceri Family, Inc., 847 F.2d 35, 38-39 (1st Cir. 1988). The plaintiff did object to the instruction, but he has not taken a cross-appeal.

It must be remembered that, in this case, the parents filed no claims to their own behoof. See supra note 1. Given that circumstance, the brunt of the defendant's mitigation argument falls squarely on the minor child. We question whether the law requires a minor plaintiff to bear some legal onus because his parents dallied in securing medical attention for him. See, e.g., Young ex. rel. Young v. Washington Hosp., 761 A.2d 559, 563-64 (Pa. Super. Ct. 2000) (concluding that when parents bring an action solely on behalf of their minor child, the parents' failure to mitigate damages is irrelevant). This question looms especially large because the court carefully limited its charge on mitigation to "the victim" — here, a reference to Moises, not to his parents — and the defendant interposed no objection.

In all events, we do not need to answer this intriguing question today. For one thing, the jury apparently rejected the

---

[4]Earlier in the trial, the parties did discuss the possibility of a jury instruction on concurrent negligence, and the district court did mention that it understood that the defendant wanted such an instruction. In the end, the court gave a very brief concurrent negligence instruction, to which neither party objected. We do not probe this point more deeply because Dr. Rovira, on appeal, has not made any developed argument concerning the substance of this instruction. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

defendant's failure-to-mitigate claim (we say "apparently" because the jury made no special finding on the point). For another thing, the defendant has presented his mitigation claim to us in skeletal form, without citation to any pertinent authority. It is a bedrock appellate rule that issues raised perfunctorily, without developed argumentation, will not be considered on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). We deem that rule apposite here.

The remaining facet of the defendant's asseveration is more conventional. He argues (or attempts to argue) that the verdict is simply too large to warrant a judicial imprimatur. The barriers that stand in the way of this argument are formidable.

If a defendant properly preserves an objection to the amount of a compensatory damage award, we inquire whether the nisi prius court committed an abuse of discretion in refusing either to trim or to set aside the verdict. McDonald v. Fed. Labs., Inc., 724 F.2d 243, 246 (1st Cir. 1984). We long have recognized that "[t]ranslating legal damage into money damages — especially in cases which involve few significant items of measurable economic loss — is a matter peculiarly within a jury's ken." Wagenmann v. Adams, 829 F.2d 196, 215 (1st Cir. 1987). When, as now, a plaintiff's injuries fall within this sphere and no objective way to measure pecuniary damages exists, courts must defer broadly to the jury's judgment unless the amount of damages awarded "is

grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand."  Segal v. Gilbert Color Sys., Inc., 746 F.2d 78, 80-81 (1st Cir. 1984) (citations and internal quotation marks omitted).

Such a standard is, by its very nature, imprecise — there is no scientific formula or measuring device that can be applied to place an exact dollar value on noneconomic damages — and doubts typically are resolved in favor of the verdict.  See, e.g., Wagenmann, 829 F.2d at 216; McDonald, 724 F.2d at 247.  Thus, abuses of discretion are not easily established in this context.

Here, however, the defendant neither asked for a new trial nor sought a remittitur in the lower court.  He thereby deprived the district judge — who had seen and heard the witnesses at first hand — of any opportunity to fine-tune the award.  By the same token, he deprived us of the benefit of the district judge's informed evaluation.  These omissions render Dr. Rovira's claim of excessiveness forfeit.  See Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 102 (1st Cir. 2003), cert. denied, 124 S. Ct. 1875 (2004); O'Connor v. Huard, 117 F.3d 12, 18 (1st Cir. 1997); Braunstein v. Mass. Bank & Trust Co., 443 F.2d 1281, 1285 (1st Cir. 1971).  Forfeited claims are reviewed only for plain error.  Rivera-Torres, 341 F.3d at 102.  At most, then, our review is limited to correcting an award that is totally unsupported by the evidence or so conscience-shocking as to constitute a miscarriage of justice.

-14-

The verdict before us easily passes this screen. In dealing with unpreserved claims of excessiveness, an appellate court must view the evidence of damages in the light most favorable to the verdict winner. The plaintiff, who was only three years old at the time of trial, has a long life expectancy. The record contains expert testimony, particularly that of Dr. Hausknecht, to the effect that the plaintiff's left arm and shoulder are permanently afflicted with Erb's palsy and that, notwithstanding several surgical interventions, they are functionally impaired. The record is also replete with evidence of the pain endured and to be endured by the plaintiff. Taking the evidence in the light most favorable to the verdict, a tapestry of significant, painful, and permanent injuries emerges. Silhouetted against this tapestry, the jury's award of damages seems large, but not unacceptably so.

The short of it is that the verdict derives at least a modicum of support from the evidence. On this chiaroscuro record, we cannot say that the award was so extravagant as to exceed "the outermost total which, by a process of rational appraisal, could fairly be said to flow from the evidence adduced at trial." Ruiz v. Gonzalez Caraballo, 929 F.2d 31, 35 (1st Cir. 1991). A fortiori, the amount of damages cannot be deemed conscience-shocking, plainly erroneous, or a miscarriage of justice. That the jury was generous to the plaintiff does not, in and of itself,

demand appellate intervention.  See Heddinger v. Ashford Mem'l Cmty. Hosp., 734 F.2d 81, 86 (1st Cir. 1984).

## III

We need go no further.  The defendant argues here matters that he did not deign to raise in the nisi prius court.  The bevues that he attributes to the district court (if bevues at all) cannot by any stretch of the most active imagination survive plain error review.  For aught that appears, the plaintiff prevailed at a hard-fought but essentially fair trial, presided over in an even-handed manner by an able district judge.  We see no manifest injustice in the entry of judgment against the defendant on the jury verdict (less the applicable setoffs, see supra note 1).

**Affirmed**.