CAMPBELL, Senior Circuit Judge,
dissenting.
This appeal centers around two issues: (1) whether in ruling upon defendant’s motion for a new trial, the district court had to apply the plain error standard in Fed. R.Crim.P. 52(b) — a question turning on whether defendant failed to lodge a timely objection within Fed.R.Crim.P. 51(b)[12] suf- *30 fícient to preserve the error for which the new trial was granted, namely, the government’s use of gambling metaphors in its closing, which the court felt may have induced a verdict based on the jury’s moral disapproval of gambling; and (2) whether the U.S. Attorney’s gambling rhetoric went so far as to exceed fair comment and, in the event plain error review was required, to meet that standard.
In answer to (1), I believe the district court was required to apply the plain error standard in ruling on the new trial motion. As for issue (2), it would be premature for us to pass judgment on whether the gambling rhetoric could be found to amount to plain error, that question being one for the district court in the first instance. I would vacate and remand while retaining jurisdiction so as to be able to decide in the future — should plain error be found below — whether that finding exceeds the district court’s considerable discretion in the matter.
1. Adequacy of Objection
Judicial review is limited to “the notably ungenerous plain error standard” whenever “a defendant defaults on [the] obligation [to protect his own interests] by failing to make a contemporaneous objection to questionable comments in the prosecution’s closing argument.” United States v. Taylor, 54 F.3d 967, 977 (1st Cir.1995). Nothing in the language of Fed.R.Crim.P. 51 and 52, or in binding precedent, suggests that some different rule applies where a district court, as here, (rather than a court of appeals) is asked, post-verdict, to grant a new trial based on an alleged inappropriate closing.
One of the principal purposes of the contemporaneous objection requirement is to alert the district judge so that she or he can take on-the-spot curative steps, by instructing the jury to disregard the prejudicial rhetoric or in some other way minimizing the harm, thus obviating the trouble and expense of a new trial. As this court stated in Taylor, 54 F.3d at 972,
[C]alling a looming error to the trial court’s attention affords an opportunity to correct the problem before irreparable harm occurs. Then, too, the raise-or-waive rule ... precludes a party from making a tactical decision to refrain from objecting, and subsequently, should the case turn sour, assigning error .... [13]
Here, there is simply no indication that the gambling metaphors used by the government in its closing, and the purported moral disapproval they might engender in jurors, were concerns ever contemporaneously called to the district court’s attention, either during the closing when those references were actually being made or, right after, before the case went to the jury, when the district judge could still have taken steps to cure whatever prejudice the rhetorical metaphors may have caused in the minds of the jurors. The basis for the grant of a new trial was not the brokers’ testimony, to admission of which earlier, unsuccessful, objections were lodged and on which earlier objec *31 tions the majority now relies in its opinion, but the colorful gambling metaphors employed by the government in closing argument which were later said by the district court to have carried the risk of inflaming the jurors’ moral disapproval.
Had defendant contemporaneously objected to this allegedly inflammatory rhetoric either during or after the closing, before the case went to the jury, the court could have instructed the jury to disregard it and explained to the jurors why the analogies were prejudicial and overblown, thus obviating the extreme and costly remedy of a new trial. Even had the defense attorney hesitated to interrupt the government’s argument, there was ample time afterwards to have lodged an objection and for the court to have taken corrective steps. Indeed, following the court’s closing jury instructions, when counsel were invited to submit their objections to the charge, defense counsel took that opportunity to protest certain parts of the government’s closing but never mentioned these supposedly outrageous misstatements. Nor did the judge say anything to counsel or the jury about them during or after the closing, as one might have expected had the earlier evidentiary objections relied on by my colleagues actually functioned so as to call to the judge’s mind that the defense was now objecting to the closing’s gambling rhetoric [14] — or even that the rhetoric violated the court’s own earlier cautionary admonition against overemphasizing certain matters. The court’s silence on the subject at the crucial moments strongly suggests that whatever the earlier objections accomplished, they did not accomplish what Rule 51(b) seeks — namely to alert the court contemporaneously, when corrective action by the court still remains possible, that the defense is then and there objecting to certain language being used in the government’s oratory.
The purpose of Rule 51(b), in other words, is to put the court on actual, not just constructive, notice that a party protests a particular alleged defect — here, the closing gambling rhetoric — so that, inter alia, appropriate corrective action can be taken immediately if warranted. Rule 51(b) is not well served by resting the finding of an adequate objection upon an elaborate chain of appellate inferences going back to non-contemporaneous objections made earlier for a different purpose. Rule 51(b) requires, and ordinarily receives, a practical interpretation, consistent with its purpose to alert the court in a meaningful way so that it can act before too late.
It . is overwhelmingly evident from the record that no one, prior to the verdict, got *32 the message, including the judge, that the defense was protesting the government’s rhetorical gambling analogies — analogies which the district court later said may have elicited the jurors’ moral disapproval based upon their distaste for gambling. Without having been contemporaneously alerted by a Rule 51(b) objection, the district court was obliged, when it ruled on defendant’s post-verdict motion for a new trial, to employ plain error review under Rule 52(b). The government made this point when arguing the motion,[15] but the district court did not address it at all. As my colleagues agree, it now seems the court, in granting a new trial, used the ordinary review standard (although Carpenter argues otherwise in his appellate brief).
My colleagues contend we should leave it to the district court, in these circumstances, whether a sufficient objection was lodged to preserve the closing gambling metaphor issue. Here, the judge, in passing on the defendants’ new trial motion, made no express finding that an objection had been made, nor did he rule at all on the government’s contention that an objection had not been preserved by the defense on the use of the gambling metaphors during the closing. But my colleagues would infer from the district court’s complete silence that it must have found a sufficient defense objection, and they say they must defer to the district court on that and all related matters.
My difficulty with the above is that it treats the raise-or-waive rule as if it were only of concern to the district court — to protect it, for instance, against being “sandbagged” in the common situation where a defendant appeals to this court from an adverse ruling of the trial judge concerning some matter never called to the court’s attention below. My colleagues’ viewpoint would hold that where the district judge is satisfied — as presumably he was here — with whatever steps defendant took, or did not take, to preserve an objection, that should end the matter.
But I believe such deference is extreme. The raise-or-waive rule, it is true, exists to protect the trial judge, but it also serves other important goals. As already discussed, it serves the purpose of judicial economy, forcing all concerned, including the court itself, to face issues — such as the challenged rhetoric used by the government here — at a time when corrective action can still be taken short of a costly new trial. The opportunity for correction afforded by a timely objection, as well as the penalty of plain error review for failure to object, also promote essential fairness to the other party, here the government— and not only to the government alone, but to those who must bear the burdens of a new trial, such as the victims of defendant’s alleged misconduct and other witnesses. Had there been a meaningful, contemporaneous objection here, the government would likely not have to retry the case, saving both monetary costs and the added burdens on many others.
This is not to question the district court’s discretion, were there merely a question of disputed evidence over the making of a sufficient contemporaneous *33 objection, to resolve that dispute. But, here, the only arguably pertinent objections in the record — those made earlier under Fed.R.Evid. 103 to the admission of certain testimony — fell flagrantly short of meeting the requirements of Fed. R.Crim.P. 51(b) for valid objections to the closing’s gambling rhetoric. And the record contains nothing except silence to suggest that the district court, when granting a new trial, ever determined that an adequate objection — or any objection — had been made. Rules 51 and 52 are binding procedural rules to which courts must adhere. The wide discretion very properly given to the trial judge does not include the discretion to ignore or simply bypass the raise-or-waive rule.[16]
I would add that even the plain error standard of Rule 52(b) still allows a court, in appropriate circumstances, when faced with a strong sense that an injustice has or may have occurred, to allow a new trial even though a timely objection was not lodged — and our review of such a decision would and should take into account the trial judge’s firsthand “feel” for a case tried in his presence. Nevertheless, plain error review remains a considerably tougher, higher, standard than ordinary review. Given defendant’s default, the government was entitled to the reassurance that the latter standard was being applied in this case, since the question of whether or not the gambling rhetoric used went too far, and its likely unfair impact on jurors, is a close one as to which the standard of review used could well have a decisive effect on whether or not to grant a new trial.
2. Whether Gambling Rhetoric Was Excessive
As said, I believe that this appeal should be remanded to the district court with instructions to reconsider its new trial ruling under the correct plain error standard. A ruling by us at this juncture would be premature, since the district court’s judgment based on its first-hand knowledge and feel is an essential prelude to whatever action this court takes. We would necessarily grant considerable deference to whatever view the district court takes on whether what occurred at the trial met the high standard of plain error. This does not mean there are no limits to our deference, nor that appellate review will thereafter be forbidden. A district court would not have carte blanche discretion to order a new trial simply because, to take a purely hypothetical example, it deemed the U.S. Attorney’s closing remarks to be too eloquent and defense counsel’s closing much less so — even if the trial court believed the difference had been decisive to the case’s outcome. There are, moreover, some arguments an attorney may make which will be so entirely relevant as to be *34 privileged as a matter of law, just as there are others which the district court may determine dispositively as going too far.
Here, the government argues that its gambling analogy was so apt that it fell within the safety zone and that, in any event, the analogy was not so extreme as to amount to plain error. This is not an easy issue, and it is one as to which the district court’s ruling, along with its reasons, one way or another, will not only be helpful but essential. I would, therefore, remand for a new ruling on the new trial motion, one explicitly based on the plain error standard, which, in these circumstances, the district court was, in my view, legally obliged by the Federal Rules of Criminal Procedure to apply. It is most unlikely the district court believed it was applying that standard when it ruled previously, and, given especially the closeness of the grounds for granting a new trial, I believe the government is entitled to a ruling expressly based upon the correct legal standard. Given the high hurdle of plain error review, a remand is no mere waste of judicial time. To the contrary, it could be critical to the outcome, and it is also a necessary act of fairness to the government and those persons and interests the government serves, given the defendant’s failure to have preserved a proper objection.

. Fed.R.Crim.P. 51(b) provides,
A party may preserve a claim of error by informing the court — when the court ruling or order is made or sought — of the action the party wishes the court to take, or the party’s objection to the court’s action and the grounds for that objection. If a party does not have an opportunity to object to a *30 ruling or order, the absence of an objection does not later prejudice that party. A ruling or order that admits or excludes evidence is governed by Federal Rule of Evidence 103.

. In a later civil case, this court has said,
We have made it transparently clear that the raise-or-waive rule can neither be ignored nor brushed aside as a "pettifogging technicality or a trap for the indolent.” Nat’l Assn of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir.1995). Rather, it is a prudential rule "founded upon important considerations of fairness, judicial economy, and practical wisdom.” Id.
Muniz v. Rovira, 373 F.3d 1, 4 (2004).

. Judge Lipez states that the court’s earlier response, "You’re covered under Rule 103,” to Carpenter's request for a running objection to admission of the Merrill Lynch brokers’ testimony (described by defense counsel as portraying Carpenter as "an aggressive speculator!, ] river boat gambler”) was a clear recognition by the court of a continuing objection that served later as an adequate objection under Rule 51(b) to the government's repeated rhetorical use, in its closing, of the gambling analogies. But Rule 103 of the Federal Rules of Evidence is an evidentiary rule. See Rule 51(b) (“A ruling or order that admits or excludes evidence is governed by Federal Rule of Evidence 103”). Appropriately, the objections in question all related to the court’s admission in evidence of the brokers’ testimony, which emphasized the risky nature of option trading but did not invoke repetitive gambling metaphors nor raise the question of whether analogizing defendant's conduct to gambling would captivate the disapproval of jurors based on their moral disapproval of gambling. A new trial was not granted because the court decided it had erred in admitting the brokers' testimony but because of the inflammatory nature of the gambling figure used in the closing, with its peculiar tendency to invoke moral disapprobation.

. Judge Lipez, in the majority opinion, speaks of “looking in vain” for any indication that the government ever argued that objection to the closing's gambling metaphors had not been preserved. In fact, the government noted (under the heading that its “closing and rebuttal fell within the bounds of proper argument”) that most of Carpenter's points had not been preserved, and listed the few that had been, making clear its belief that the defense's objection to the use of gambling metaphors was one that had not been preserved and was subject to plain error review.

. Of course, one might imagine special circumstances where a defense objection might not be needed to preserve an issue. For instance, the judge might, when the offending conduct occurs, give voice, sua sponte, on the record, to his own objection, which might in some circumstances relieve the defense of the need to object separately. But it seems unwarranted to presume such a special exception here, given the judge’s complete silence at and after the closing, especially as, when the gambling rhetoric was later called to the judge’s attention, he granted the extraordinary relief of a new trial. Surely, one would suppose, if the judge had at all considered the questionable character of the rhetoric at the time it was delivered, or then had believed the defense had objected to it at some earlier time, he would not have remained silent in the face of such knowledge, allowing events to proceed and the jury to remain uninstructed as to the improprieties that had occurred. To infer on this record and in the face of judicial silence, the preserving of a sufficient objection, seems to me tantamount to saying that Rule 51(b) and its companion, 52(b), need not be observed by the trial judge unless he or she cares to do so.